**Karl O. HOEHNE and Phyllis Hoehne, Plaintiffs/Appellants,**

v.

**COUNTY OF SAN BENITO; Henry Solorio; Frank Sabbatini; Enos Silva; and Edward Lydon, Defendants/Appellees.**

**No. 87–2825.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 12, 1988.

Decided March 15, 1989.

Steven G. Baird, Mountain View, Cal., for plaintiffs/appellants.

David E. Pipal, Hollister, Cal., for defendants/appellees.

Before ALDISERT *, BRUNETTI and LEAVY, Circuit Judges.

ALDISERT, Circuit Judge:

We are to decide, under the specific facts in this case, whether the district court erred in dismissing for lack of ripeness the complaint of San Benito County, California, landowners Karl O. Hoehne and Phyllis Hoehne, filed against the County of San Benito and certain County officials. The court ruled that the Hoehnes' claims were not ripe because there had been no final decision by the County concerning the Hoehnes' land-use application. If a final decision had been made by County authorities, the Hoehnes were eligible to seek federal relief; if no such decision was made by the County, it was premature for the Hoehnes to bring the federal action. We hold that any further attempt by the Hoehnes to seek relief from the County would have been futile. Accordingly, we will reverse the judgment of the district court dismissing the complaint for lack of ripeness.

I.

In 1984, the Hoehnes purchased a sixty-acre parcel of land in San Benito County, California. The property was zoned "Rural," permitting single-family residences with a five-acre minimum lot size. The Hoehnes submitted a subdivision application to the San Benito County Planning Commission. The application proposed dividing the property into four lots with an average size of fifteen acres per lot (specifically, one seventeen-acre lot, one fifteen-acre lot, and two fourteen-acre lots). The Hoehnes intended to build their retirement home on one lot and sell the other three.

---

* Ruggero J. Aldisert, Senior Judge, United States Court of Appeals for the Third Circuit, sitting by designation.

The Commission staff recommended denying the subdivision application. CR.51 at Ex.3:2. On August 15, 1985, the Commission held a hearing on the application and voted on a split vote for denial. The denial was based on staff findings that: (1) the site is not physically suited for the proposed type or density of development; and (2) the design or proposed improvements are likely to cause substantial environmental damage. *Id.;* CR.58 at Ex.A:16.

The Hoehnes appealed the decision to the County Board of Supervisors, raising five objections to the Commission's conclusions: (1) that the proposed parcels are within the density requirements imposed by the County's General Plan; (2) that the proposed densities would not create significant environmental damage; (3) that the project site is adequately served by a transportation system for ingress and egress; (4) that proper grading, septic preparation, and erosion control measures would mitigate environmental impacts; and (5) that the proposed subdivision is consistent with the policies embodied in the County General Plan. CR.73 at 3–4 (district court order granting defendants' motion for summary judgment).

The Board of Supervisors held a hearing on the appeal on September 16, 1985, and a closed meeting on October 1, 1985, at which they voted to affirm the Commission's denial. A review of the minutes of the Board's meetings indicates that the major concerns of the supervisors were articulated in the following statement of Rob Mendiola, County Planner:

> Our policies within our General Plan [include] one specifically which says that there will not be a development permitted on lands greater than 30% [slope], and this parcel is greater than 30% [slope]. There are other policies that say we will not allow development where there could be substantial environmental damage. All those issues were taken into consideration by the Planning Commission.

CR.58 at Ex.B:6.

The Board added a third reason to the two stated by the Commission: that the quantity of water would be inadequate in drought conditions. *Id.* at Ex.C:3–4. Subsequent to the Board's decision, the County amended its General Plan land-use designation and zoning maps to change the designation of this parcel to "Agricultural Rangeland" (forty-acre minimum lot size).

Thereafter, on May 12, 1986, appellants filed a complaint in federal district court against appellees County of San Benito and supervisors Henry Solorio, Mike Graves, Frank Sabbatini, Enos Silva and Edward Lydon. The complaint alleged, *inter alia,* deprivations of substantive due process, procedural due process, and equal protection, and inverse condemnation. The County filed an answer followed by a motion for summary judgment. The court heard the County's motion on July 10, 1987, and on August 7, 1987, granted the motion on the grounds that the case was not ripe because the Board's decision was not final and because plaintiffs had not sought compensation under state law. Plaintiffs moved for reconsideration. The court heard that motion on September 11, 1987, and, on September 30, 1987, denied the motion, dismissing the claims without reaching the merits. The Hoehnes appeal.

We are to decide whether the Hoehnes were required to pursue other remedies or take other action before the appropriate County agencies as a prerequisite to seeking relief in the federal forum.

Jurisdiction was proper in the trial court under 28 U.S.C. § 1343(a)(3). Jurisdiction on appeal is proper under 28 U.S.C. § 1291. This court reviews *de novo* a district court's order of summary judgment. *McMillan v. Goleta Water Dist.,* 792 F.2d 1453, 1456 (9th Cir.1986), *cert. denied,* 480 U.S. 906, 107 S.Ct. 1348, 94 L.Ed.2d 519 (1987). Ripeness is a question of law, also reviewed *de novo. Herrington v. Sonoma County,* 857 F.2d 567, 568 (9th Cir.1988).

II.

The Hoehnes contend, *inter alia,* that the County's application of its land-use reg-

ulations as to them effects a taking of their property interest without just compensation, and that this action denies them protections afforded them under the federal constitution. It is settled that such a claim is not ripe until the landowner has received a final decision regarding how it will be allowed to develop its property. *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 190, 105 S.Ct. 3108, 3118, 87 L.Ed.2d 126 (1985). *See also Hodel v. Virginia Surface Mining & Reclamation Ass'n, Inc.*, 452 U.S. 264, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981); *Agins v. Tiburon*, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980); *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978). The task before us, as it was before the district court, is to determine whether, under the circumstances of this case, the San Benito County officials had reached a final decision.

We emphasize that our decision here turns on the specific facts presented in this case. Our determination follows the common law tradition of deciding only specific cases and controversies. Thus our holding here is "simply a precept[ ] attaching a definite detailed legal consequence to a definite, detailed state of facts." *Floyd v. Lykes Bros. S.S. Co.*, 844 F.2d 1044, 1050 (3d Cir.1988) (quoting *United States v. Criden*, 633 F.2d 346, 354 n. 4 (3d Cir.1980), *cert. denied*, 449 U.S. 1113, 101 S.Ct. 924, 66 L.Ed.2d 842 (1981)). We also emphasize that ruling case law makes it very difficult to open the federal courthouse door for relief from state and local land-use decisions. The Supreme Court has erected imposing barriers in *MacDonald, Sommer & Frates v. Yolo County*, 477 U.S. 340, 106 S.Ct. 2561, 91 L.Ed.2d 285 (1986), and *Williamson County*, 473 U.S. 172, 105 S.Ct. 3108, to guard against the federal courts becoming the Grand Mufti of local zoning boards.

■ A claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue. *Williamson County*, 473 U.S. at 186, 105 S.Ct. at 3116. The Court has explained its reluctance to examine takings claims until such a final decision has been made as follows:

> Although "[t]he question of what constitutes a 'taking' for purposes of the Fifth Amendment has proved to be a problem of considerable difficulty," [citing *Penn Central*], this Court consistently has indicated that among the factors of particular significance in the inquiry are the economic impact of the challenged action and the extent to which it interferes with reasonable investment-backed expectations [citations omitted]. Those factors simply cannot be evaluated until the administrative agency has arrived at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question.

*Williamson*, 473 U.S. at 190–91, 105 S.Ct. at 3118–19.

This court has held that the final decision requirement is applicable to substantive due process and equal protection claims brought to challenge the application of land use regulations, *Kinzli v. City of Santa Cruz*, 818 F.2d 1449, 1455–56 (9th Cir.), *as amended*, 830 F.2d 968 (1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 775, 98 L.Ed.2d 861 (1988); *Shelter Creek Dev. Corp. v. City of Oxnard*, 838 F.2d 375, 379 (9th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 134, 102 L.Ed.2d 106 (1988); *Herrington*, 857 F.2d at 569, and is most likely applicable to related procedural due process claims, *id.* (applying final decision requirement to procedural due process claim); *Kinzli*, 818 F.2d at 1456 (no denial of procedural due process because substantive due process claim not ripe); *Norco Constr., Inc. v. King County*, 801 F.2d 1143, 1145 (9th Cir.1986) (final decision requirement applicable to procedural due process claim for unlawful delay in processing development application).

■ The Supreme Court has recognized that land-use planning is not an all-or-nothing proposition. A government entity is not required to permit a landowner to de-

velop property to the full extent it may desire. Denial of the intensive development desired by a landowner does not preclude less intensive, but still valuable development. *MacDonald,* 477 U.S. at 353, 106 S.Ct. at 2569. "The local agencies charged with administering regulations governing property development are singularly flexible institutions; what they take with the one hand they may give back with the other." *Id.* at 350, 106 S.Ct. at 2567. The property owner, therefore, has a high burden of proving that a final decision has been reached by the agency before it may seek compensatory or injunctive relief in federal court on federal constitutional grounds.

Fortunately for the federal courts, the solution to this problem is not achieved by color-matching putative precedents and comparing snippets from stated rationales contained in past cases. As in many types of litigation, resolution of this issue turns on the record facts. Relevant cases in the Supreme Court and this court are extremely fact-specific. Only the facts tell us whether a final decision had been reached. And, to prove that a final decision was indeed reached, the facts of the case must be clear, complete, and unambiguous. This is such a case. We believe that the uncontroverted facts demonstrate that San Benito County had reached a final decision on the Hoehnes' application for subdivision of this land. We are persuaded that the County has drawn the line, clearly and emphatically, as to the sole use to which the Hoehnes' parcel may ever be put.

### III.

■ The Hoehnes' argument may be easily summarized. They contend that a quintessential final decision was reached here. The Hoehnes bought this sixty-acre tract of land as a retirement investment, relying on the zoning ordinance prescribing a five-acre minimum lot size. Even though they filed a subdivision plan for four fifteen-acre lots, perfectly permissible under the zoning ordinance's minimum lot size, the submission was rejected. Upon appeal, the Board of Supervisors not only affirmed the Planning Commission's recommendations but gratuitously added another ground for denial: that the quantity of water would be inadequate in drought conditions. (At oral argument, the County conceded that there had been a final decision on this issue.) Thereafter, if there was any doubt left as to the supervisors' attitude in this case, they eliminated that doubt completely by enacting legislation amending the County General Plan and changing the minimum lot size from the five-acre requirement in existence when the Hoehnes applied for subdivision approval to a forty-acre minimum, thereby limiting development to only one single-family residence on the sixty-acre tract.

We are not impressed by the County's arguments that it had made no final decision here, and that the case is otherwise not yet ripe. The County contends that the Hoehnes were required to pursue state inverse condemnation procedures, to raise and seek a response from the Board of Supervisors as to any of the causes of action alleged in their complaint, to make application pursuant to the County's variance procedure, to make application to the County for other uses of its land pursuant to the conditional use permit procedure, to make application to the County for a more favorable re-zoning of the property, or to apply for a General Plan amendment relating to the slope density requirements.

### IV.

The County's responses do not require extended discussion.

### A.

The Supreme Court has held that, "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Williamson County,* 473 U.S. at 195, 105 S.Ct. at 3121.

At the time the County denied the Hoehnes' subdivision application, California law prohibited actions seeking just compensation as a remedy for regulatory takings.

A landowner's sole remedy in cases of inverse condemnation was to seek declaratory relief or mandamus to invalidate the offending regulation. *Agins v. City of Tiburon*, 24 Cal.3d 266, 275–77, 598 P.2d 25, 29–31, 157 Cal.Rptr. 372, 375–76 (1979) (in banc), *aff'd on other grounds*, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980). Although the Supreme Court later expressly disapproved this aspect of California law, *see First English Evangelical Lutheran Church v. County of Los Angeles*, 482 U.S. 304, 107 S.Ct. 2378, 2387, 96 L.Ed.2d 250 (1987), the appropriate point for determining the adequacy of state compensation procedures is at the time the alleged taking occurs. *See Williamson County*, 473 U.S. at 194, 105 S.Ct. at 3120 ("all that is required is that a 'reasonable, certain and adequate provision for obtaining compensation' exist at the time of the taking").

Because no remedy in inverse condemnation existed at the time of the alleged taking in this case, the district court erred in ruling that the Hoehnes were required to pursue state compensation procedures before filing for federal court review.

### B.

■ The district court found that the Hoehnes' claims were also not ripe because they had not raised their constitutional challenges before the Board of Supervisors. The court stated, "If plaintiffs had pointed out to the Board that the County's ordinances and General Plan were unconstitutional in significant part, then the Board would have had both an opportunity and an obligation to address the problems." CR. 73 at 4:26–5:3.

Appellants' claims of constitutional violations are as-applied claims, rather than facial ones. As such, they could not have brought these contentions before the Board during the hearings on their subdivision application. The alleged violations occurred during the decision-making process, after the close of public hearings on the application. Even the first claim for relief, attacking the General Plan prohibition of development on slopes exceeding thirty degrees, is in reality a contention that the policy is unconstitutional as applied to them. Distilled to their essence the claims can be stated in alternative form: that the application of the County's land-use regulations effects a taking because, as applied to the Hoehnes, the regulations do not substantially advance legitimate state interests; and, that the application of the regulations by the County effects a taking because it denies the Hoehnes' economically viable use of their land. *See Agins v. Tiburon*, 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980).

After considering the landowners' briefs and oral argument, we do not perceive their attack to be based on the contention that the subdivision regulations and General Plan are facially unconstitutional. To the extent that the district court considered the Hoehnes' complaint to rest on a facial, rather than an as-applied challenge, we believe that it erred.

### C.

■ The County's other arguments—that the landowners could have sought approval of their plan by means of a variance or conditional use permit, or applied for a favorable rezoning or a General Plan amendment—are not supported by either the law or the brute facts of the record.

Adhering to the teachings of *Williamson County*, this court has held that a final decision requires at least: "(1) a rejected development plan, and (2) a denial of a variance." *Kinzli*, 818 F.2d at 1454. Under Ninth Circuit law, the final decision requirement can be avoided "if attempts to comply with that requirement would be futile." *Herrington*, 857 F.2d at 569; *see also Lake Nacimiento Ranch v. San Luis Obispo County*, 841 F.2d 872, 876 (9th Cir.1987), *cert. denied*, —— U.S. ——, 109 S.Ct. 79, 102 L.Ed.2d 55 (1988); *Kinzli*, 818 F.2d at 1454; *Martino v. Santa Clara Valley Water Dist.*, 703 F.2d 1141, 1146 n. 2 (9th Cir.), *cert. denied*, 464 U.S. 847, 104 S.Ct. 151, 78 L.Ed.2d 141 (1983). It would have been futile for the Hoehnes to seek a zoning variance to accommodate their application because the supervisors, by legislative act, changed the zoning designation

from a minimum lot size of five acres to one of forty acres. The record does not show that any other type of variance was available to the Hoehnes. The County indicates that the landowners could have sought a variance from the General Plan policy against development on slopes greater than thirty degrees. However, a variance is not available for exceptions to the requirements of the General Plan. *See* Cal.Gov't Code § 66474(a) (requiring County to reject subdivision proposal inconsistent with General Plan); Cal.Gov't Code § 66473.5 (requiring local agency to reject proposal inconsistent with General Plan). Application for a variance was not a "viable option." *Herrington*, 857 F.2d at 570.

It would have also been futile for the Hoehnes to seek a conditional use permit or a more favorable rezoning because in actually rezoning the tract to further restrict development, the supervisors themselves sent a clear and, we believe, final signal announcing their views as to the acceptable use of the property. Finally, it would have been futile for the Hoehnes to seek a General Plan amendment in their favor, because the supervisors had amended the General Plan in a manner clearly and unambiguously adverse to the application of the landowners.

The district court erred when it concluded that "variance[s] and other remedies were available to the plaintiffs prior to filing the instant action." CR.80 at 2.

### D.

We are satisfied that a final decision had been reached here because of the futility of any further attempts by the Hoehnes. This case meets the stringent requirements for ripeness set forth in *MacDonald, Williamson County,* and *Kinzli.* We are also satisfied that invoking the futility doctrine here comports precisely with the previous teachings of this court. Re-application and re-submission to the County "is excused if such an application would be an 'idle and futile act.'" *Kinzli,* 818 F.2d at 1454 (quoting *Martino,* 703 F.2d at 1146 n. 2). We conclude that the Hoehnes have "done everything possible to obtain acceptance of

[their] development proposal." *Herrington,* 857 F.2d at 570. The factual record developed here goes far beyond mere allegations. *See id.* It is replete with uncontroverted facts.

Following the denial of appellants' proposal, the County rezoned the Hoehnes' land as Agricultural Rangeland with a forty-acre minimum lot size. The Planning Commission staff has explained this classification:

> This designation is assigned to the remote hillside areas.... These areas are typified by a lack of transportation access and the lack of utility services to allow for more dense typical development. Many of these areas are found within the critical fire hazard area or in the "outback" areas of the many isolated canyons throughout the County.

CR.51 at Ex.3:1. This act of rezoning is the strongest possible, if not irrefutable, indication that the County is opposed to any subdivision of this land. Transcripts of the Commission and Board hearings support this conclusion. In addition, an uncontroverted affidavit by Mr. Hoehne reports that he offered to submit a subdivision application creating three twenty-acre parcels and was told by County Planning Director Rob Mendiola that such an application would be denied. CR.57 at 1:28–30.

The zoning ordinance in effect when the property was purchased permitted its subdivision into twelve lots. The landowners asked for four lots. They were turned down. They asked for three lots. They were turned down. The County amended the General Plan and permitted subdivision into forty-acre lots only. Simple arithmetic supplies the answer. Forty goes into sixty one time. The Hoehnes got the final message: You can't subdivide at all; you may only erect one single-family dwelling on your sixty-acre tract!

We do not pass judgment on the wisdom or constitutionality of the County's decision. However, under these circumstances, we believe that the end of the road was reached by the Hoehnes and by the County. The decision was final in all respects.

V.

We conclude that the County "has arrived at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question." *Williamson County,* 473 U.S. at 191, 105 S.Ct. at 3119. The district court erred in concluding otherwise.

REVERSED.