Elling O. EIDE, Plaintiff–Appellee,

v.

SARASOTA COUNTY, a political subdivision of the State of Florida, Defendant–Appellant.

No. 88–3700.

United States Court of Appeals, Eleventh Circuit.

March 8, 1990.

Richard E. Nelson, Nelson, Hesse, Cyril, Smith, Widman & Herb, James D. Keeney, Sarasota, Fla., for defendant-appellant.

Donald E. Hemke, Carlton Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, Fla., for plaintiff-appellee.

Before ANDERSON and COX, Circuit Judges, and SHOOB *, District Judge.

ANDERSON, Circuit Judge.

The issue in this case is whether a landowner's contentions that Sarasota County violated his equal protection and substantive due process rights are ripe for decision.[1] We find that the plaintiff's claims are not ripe.

## I. FACTUAL BACKGROUND

Florida's land use planning statutes provide for the adoption of comprehensive plans "to control and direct the use and development of property within a county or municipality." *Machado v. Musgrove,* 519 So.2d 629, 631–32 (Fla. 3d DCA 1987) (citations omitted), *adopted en banc,* 519 So.2d 629 (Fla. 3d DCA), *review denied,* 529 So.2d 693, 694 (Fla.1988). Once a comprehensive plan for an area is adopted, all development approved by a governmental agency must be consistent with the plan. Fla.Stat. § 163.3194 (Supp.1989).

On June 30, 1981, Sarasota County (the "County") adopted a statutorily mandated comprehensive plan ("Apoxsee") to map out the future development of land in the County. This comprehensive plan identified various areas as "village activity centers," "community centers," and "town centers." Village activity centers are permitted to have approximately 75 acres of commercially zoned land while community centers may have 125 acres in commercial use.[2] Town centers are permitted to have variable commercial acreage with no upper limit on the amount of commercially zoned land. Centers where less than 50% of the acreage is commercial are authorized to adopt sector plans "to determine future commercial land-use allocations to support future population growth in the area." R9–110. In order for property included in a sector plan to be rezoned, the proposed rezoning and development plans have to be consistent with both Apoxsee and the sector plan. Adoption of a sector plan does not change the zoning of any of the properties involved.

Elling Eide, the appellee, owns two parcels of land—one of approximately fourteen acres (the "14–acre parcel") and the other of approximately nineteen acres (the "19–acre parcel")—which are situated west of U.S. 41 about five miles south of the city limits of the City of Sarasota in Sarasota County. Eide also owns a parcel east of U.S. 41 which he leases to developers who

---

* Honorable Marvin H. Shoob, U.S. District Judge for the Northern District of Georgia, sitting by designation.

1. Sarasota County has raised a number of other grounds on appeal. However, because we dispose of this case on ripeness grounds, we need not consider the County's other arguments.

2. At trial, there was testimony that the 75 acres permitted for a village activity center was simply a guideline, not a cap on the amount of commercial acreage permissible. R5–65. However, the possibility of a flexible amount of commercial acreage is not vital to our holding, and we assume that the 75 acres allotted for village activity centers and the 125 acres allotted for community centers are caps.

have transformed it into a Kmart shopping center. Apoxsee designates this area as a village activity center around a regional center (the Sarasota Square Mall). Prior to the development of a sector plan for this area, the 19–acre parcel was zoned RSF–2 (residential, single family, 3.5 units/acre), and the 14–acre parcel was zoned RMF–2 (residential, multi-family, 9 units/acre).

In 1984 another property owner in the area requested permission from Sarasota County to prepare a proposed sector plan. Eide discovered that the sector plan included his 14–acre parcel but not his 19–acre parcel. After a County official informed Eide that inclusion in the sector plan was the only way that his properties would be considered for commercial zoning in the future, he asked that the sector plan boundary be amended to include his larger property as well. The County amended the sector plan boundary as per his request.

In 1986, because Eide wanted to take advantage of the favorable capital gains tax law, he complained that the landowners who were preparing the sector plan were taking too long; at his request, the County's professional planning staff undertook the completion of the plan. The completed sector plan identified three possible alternatives for future zoning; two of these alternatives recommended some of Eide's property for commercial development, while the third would have zoned all of Eide's property residential (with the exception of the Kmart parcel). The sector plan's final recommendation adopted a hybrid of two of the alternatives; however, it recommended that Eide's parcels continue to be zoned residential. The sector plan also indicated that an amendment to Apoxsee designating the area as a community or town center would be appropriate in the future; however, the plan suggests that future commercial development should be located east of U.S. 41, and Eide's parcels are located to the west of 41. Sector Plan 84–2, pp. 47–48, 64, 93. On September 16, 1986, the County adopted the sector plan.

Before the completion of the sector plan, Eide filed a petition for the rezoning of his 14–acre parcel. However, a traffic study was required to accompany all rezoning petitions. The County's planning staff returned the petition to Eide for a required traffic impact analysis; Eide then voluntarily withdrew his petition. Eide never requested that the 19–acre parcel be considered for rezoning.

Challenging that the sector plan was unconstitutional as applied to his property,[3] Eide then filed a suit for damages and declaratory and injunctive relief under 42 U.S.C. § 1983 and the Due Process and Equal Protection Clauses of the Fourteenth Amendment. Sarasota County raised several defenses to Eide's claims, including a challenge to Eide's assertion that the County had made a final decision concerning his land parcels. The district court rejected this ripeness defense. After a jury trial, Eide was awarded $850,000. In addition, the court ordered the County to grant Eide commercial zoning.

We disagree with the district court's determination that the case was ripe for adjudication. Therefore, we reverse the district court's judgment and order that the Section 1983 claims be dismissed as not ripe. *See Williamson County Regional Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985).

## II. ANALYSIS

The question of ripeness affects our subject matter jurisdiction in this action. *See Greenbriar, Ltd. v. City of Alabaster,* 881 F.2d 1570, 1573 n. 7 (11th Cir.1989); *St. Clair v. City of Chico,* 880 F.2d 199, 201 (9th Cir.1989); *Unity Ventures v. Lake County,* 841 F.2d 770, 774 (7th Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 226, 102 L.Ed.2d 216 (1988); *Duke City Lumber Co. v. Butz,* 539 F.2d 220, 221 n. 2 (D.C.Cir.1976) (per curiam), *cert. denied,* 429 U.S. 1039, 97 S.Ct. 737, 50 L.Ed.2d 751 (1977). The purpose of the ripeness doctrine is to avoid premature judicial review of local decisions, particularly in an area such as zoning where the courts must be careful not to usurp local authority. In

3. In the district court, Eide abandoned any claim of facial unconstitutionality.

*Williamson County*, the Supreme Court held that a Section 1983 claim involving a regulatory taking of property in violation of substantive due process is not ripe for review until the plaintiff shows that the local authority has reached a final decision regarding the application of the regulation to the plaintiff's property.[4] 473 U.S. at 199–200, 105 S.Ct. at 3123. The reason for this requirement is found in the test for a successful substantive due process claim. In order to establish a substantive due process claim, the plaintiff must demonstrate that the "regulation [ ] goes so far that it has the same effect as a taking by eminent domain." *Williamson County*, 105 S.Ct. at 3122. "A court cannot determine whether a regulation has gone 'too far' unless it knows how far the regulation goes." *MacDonald, Sommer & Frates v. Yolo County*, 477 U.S. 340, 348 n. 8, 106 S.Ct. 2561, 2566 n. 8, 91 L.Ed.2d 285, *reh'g denied*, 478 U.S. 1035, 107 S.Ct. 22, 92 L.Ed.2d 773 (1986). The Supreme Court has interpreted its line of cases: "[o]ur cases uniformly reflect an insistence on knowing the nature and extent of permitted development before adjudicating the constitutionality of the regulations that purport to limit it." 477 U.S. at 351, 106 S.Ct. at 2567.

Several reasons persuade us that Eide's claim is not ripe. First, Eide has neither submitted a development plan to the County nor presented the County with a petition for rezoning, and, therefore, the County has not had the opportunity to consider the arguments for commercial zoning of Eide's land concretely and independently. Second, the County has not made a determination of the extent of development that would be permitted on Eide's land; thus, we cannot determine if a taking has occurred. In addition, commercial zoning of Eide's parcels may be consistent with the sector plan. Finally, Eide may petition for an amendment to the comprehensive plan to upgrade the area to either a community or town center. This option would enable the County to grant Eide commercial zoning with the additional acreage available.

Eide has not submitted even a single plan for the commercial development of his properties. He has not submitted a petition to rezone his properties from their present residential zoning to either higher density zoning or commercial zoning. As a general rule, the challenging of the application of a zoning plan or ordinance to a particular property is not ripe until the landowner has submitted a plan for development of his or her property. *Agins v. Tiburon*, 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980).

Eide argues that his reasons for wanting his land rezoned commercial were presented to the Planning Commission and to the County during the proceedings which culminated in the adoption of the sector plan. He argues that his reasons were fully considered and rejected by the appropriate decision-making bodies, and thus the decision is final and the instant action is ripe. We reject Eide's argument. We are not satisfied that the consideration of his argu-

---

**4.** *Williamson County* held that, in the context of the Just Compensation Clause of the Fifth Amendment, the plaintiff must also show that no state remedy exists to redress the injuries alleged. A showing that no state remedy exists is not required to sustain a claim of deprivation of substantive due process. *Greenbriar, Ltd.*, 881 F.2d at 1574 n. 8 (holding second prong of *Williamson County* ripeness test not applicable in substantive due process context); *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 882 F.2d 1398, 1407 (9th Cir.1989) (holding second prong not applicable for substantive due process claim and first prong not applicable in the context of a physical taking claim), *petition for cert. filed*, 58 U.S.L.W. 3242 (U.S. Oct. 10, 1989) (No. 89–473); *but see Culebras Enterprise Corp. v. Rivera Rios*, 813 F.2d 506, 515 (1st Cir.1987) (for substantive due process claim, exhaustion of state remedies required for ripeness).

On the facts of this case, Eide's equal protection claim is simply another label for his substantive due process claim; thus, we apply the same ripeness standard to both claims. *See Anthony v. Franklin County*, 799 F.2d 681, 686, *reh'g denied*, 804 F.2d 681 (11th Cir.1986); *St. Clair*, 880 F.2d at 202; *Landmark Land Co. of Oklahoma v. Buchanan*, 874 F.2d 717, 722 (10th Cir.1989); *Herrington v. County of Sonoma*, 857 F.2d 567 at 569 (9th Cir.1988); *Unity Ventures v. Lake County*, 841 F.2d 770, 775 (7th Cir.1988); *Shelter Creek Dev. Corp. v. City of Oxnard*, 838 F.2d 375, 379 (9th Cir.1988); *Kinzli v. City of Santa Cruz*, 818 F.2d at 1449, 1455–56 (9th Cir. 1987); *Norco Construction v. King County*, 801 F.2d 1143, 1145 (9th Cir.1986).

ments, as merely a few of the many matters considered as part of the overall plan, would afford either the concreteness or finality required of a final decision.

■ Again relying on his perception that the County has fully heard, considered and rejected all of his reasons, Eide argues that any further action before the County would be futile, and, therefore, his action is ripe for review. The so-called "futility exception" to the final decision requirement does excuse the repeated submission of development plans where the submission would be futile. *See Shelter Creek Dev. Corp. v. City of Oxnard*, 838 F.2d 375, 377 (9th Cir.1988). However, in "as applied" challenges to ordinances and land use plans, the Seventh and Ninth Circuits have held that, "until at least one meaningful application" has been submitted for the local authority's review and application of the zoning regulations, futility is not established and a constitutional challenge to local zoning may not be entertained. *Kinzli v. City of Santa Cruz*, 818 F.2d 1449, 1454 (9th Cir.1987) (citing *Williamson County*, 105 S.Ct. at 3117 and *MacDonald, Sommer & Frates v. Yolo County*, 477 U.S. 340, 106 S.Ct. 2561, 2568 n. 8, 91 L.Ed.2d 285, *reh'g denied*, 478 U.S. 1035, 107 S.Ct. 22, 92 L.Ed.2d 773 (1986), the court held *"at least one* application must be submitted before the futility exception applies."  (emphasis in original)); *see Austin v. City and County of Honolulu*, 840 F.2d 678, 680 (9th Cir.1988) (citing *Williamson County* and *Lake Nacimiento Ranch Co. v. County of San Luis Obispo*, 830 F.2d 977 (9th Cir. 1987); *Shelter Creek*, 838 F.2d 375, 379 (9th Cir.1988) (holding " 'futility exception' is unavailable unless and until landowner has submitted at least one 'meaningful application' for development of the property"); *Herrington v. Sonoma County*, 834 F.2d 1488, 1494–95 (9th Cir.1987), *as amended*, 857 F.2d 567, 569 (9th Cir.1988) (explaining *Kinzli*'s holding by stating: "a property owner cannot rely on the futility exception until he or she makes at least one meaningful application" and holding that

the claim was ripe for adjudication); *but see, Martino v. Santa Clara Valley Water Dist.*, 703 F.2d 1141, 1146 n. 2 (9th Cir. 1983) (stating, in *dicta*, that "as applied" challenge to ordinance may be ripe without submission of development plan if submission would be futile), *cert. denied*, 464 U.S. 847, 104 S.Ct. 151, 78 L.Ed.2d 141 (1983).

There are important reasons supporting the Seventh and Ninth Circuits' requirement of a final decision involving a specific development plan before suit may be filed. Zoning is a delicate area where a county's power should not be usurped without giving the county an opportunity to consider concrete facts on the merits prior to a court suit. Moreover, for a meritorious substantive due process claim, a plaintiff must demonstrate that the zoning regulation has gone "too far," and the Supreme Court has clearly stated that a case is not ripe until the nature and extent of the permitted development is known. *MacDonald, Sommer & Frates v. Yolo County*, 477 U.S. at 351, 106 S.Ct. at 2567. In this case, we do not know the nature and extent of the development which will be permitted.

■ Eide argues, however, that the sector plan conclusively precludes any possible commercial zoning for his properties, and that this decision has such an adverse effect on the value of his property and his investment-backed profit expectations as to constitute a taking. Assuming that commercial zoning is foreclosed, Eide argues that additional attempts to obtain commercial zoning would be futile. We need not in this case decide whether a final decision denying Eide commercial zoning would render the case ripe,[5] because we are not satisfied that there has been a final decision denying commercial use of his property; in other words, we are not satisfied that further efforts to obtain commercial zoning would be futile. Eide argues that it is obvious that commercial zoning would be inconsistent with the sector plan since the sector plan designates his property as residential. However, Eide's determination of

---

**5.** For example, even if commercial zoning were foreclosed, high density residential (e.g., high

rise condominiums) might be permitted.

what is inconsistent is not controlling here; the County and the Florida courts are arbiters of what is consistent.

There is a split in Florida state courts over what is meant by the requirement of consistency. In *Southwest Ranches Homeowners Ass'n v. Broward County*, 502 So.2d 931 (Fla. 4th DCA 1987), *reh'g denied*, 511 So.2d 999 (Fla.1987), Florida's Fourth District held that a land use plan is not the "sole, controlling document with which subsequent plan elements ha[ve] to comply." Instead, the court required that a county's approval of a land use more intensive than that provided by the land use plan be considered in light of all of the elements of the plan, and not simply rejected on the basis of the land use plan. On the other hand, in *Machado v. Musgrove*, 519 So.2d 629 (Fla. 3d DCA 1987), *adopted en banc*, 519 So.2d 629 (Fla. 3d DCA), *review denied*, 529 So.2d 693, 694 (Fla. 1988), the Third District required strict adherence to the land use plan. Neither of these Florida court decisions are binding in Sarasota County. In addition, during a County Commission hearing introduced at trial, the Commission Chairman stated: "Commercial in that area is not part of the Sector Plan, but that doesn't stop the Board from reversing the staff recommendation." Therefore, since the sector plan did not rezone any land, but rather, it only adopted plans for future rezoning, the County could determine that commercial development of Eide's parcels is consistent with the sector plan and would not violate the 75 acre "cap"; thus, it is premature to determine that such a rezoning would be inconsistent with the plan.

In any event, there is another reason why further attempts to obtain commercial zoning would not be futile. Eide could petition the County for an amendment to the comprehensive plan. The sector plan itself provides for the possibility of upgrading the area to a community or town center; such an amendment of the comprehensive plan would increase the acreage available for commercial use and could pave the way for a designation of Eide's land as commercial.

Eide argues that it would be futile for him to pursue a comprehensive plan amendment because the County adopted a Planning Commission recommendation that the area not be considered for a comprehensive plan amendment to upgrade it to a community or town center. However, the County had not been presented with such a comprehensive plan amendment, and, therefore, the County has not been given the opportunity to consider such an amendment independently on its own merits.

Eide cites *Hoehne v. County of San Benito*, 870 F.2d 529 (9th Cir.1989), to support his position that the filing of a comprehensive plan amendment petition would be futile. In *Hoehne*, the court determined that it would be futile to seek a plan amendment after the county involved had amended the plan in "a manner clearly and unambiguously adverse to the application of the landowners." 870 F.2d at 535. *Hoehne* is inapposite in this case because the County here has not taken any action which would be unambiguously adverse to a petition requesting that the area be designated a community or town center.

Decisions on ripeness issues are fact-sensitive. On the particular circumstances of this case and for the foregoing reasons, we conclude that the instant Section 1983 claims are not ripe. Accordingly, the judgment of the district court is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.