344 F.3d 822
 Carpinteria Valley Farms, Ltd., a California limited partnership, f/k/a Kbdr Properties, Ltd., a California limited partnership; Yeager Holdings, Inc., a Colorado corporation; Patrick M. Nesbitt, individually and as Trustee of the Patrick M. Nesbitt Family Trust, Plaintiffs-Appellants,
v.
The County of Santa Barbara, a municipal corporate entity; Santa Barbara County Planning and Development Department, a County department; Dan Gira; Noel Langle; al Mccurdy; Patty Miller; June Pujo; Jennifer Trunk, Defendants-Appellees.
 No. 01-57218.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted February 5, 2003 — Pasadena, California.
 Filed June 25, 2003.
 Amended September 23, 2003.
 
 A. Barry Cappello, Santa Barbara, California, and Norman Pine, Sherman Oaks, California, for the plaintiffs-appellants.
 David Pettit, Los Angeles, California, for the defendants-appellees.
 Appeal from the United States District Court for the Central District of California; Nora M. Manella, District Judge, Presiding. D.C. No. CV-00-10154-NM.
 Before: Cynthia Holcomb Hall, David R. Thompson, and Marsha S. Berzon, Circuit Judges.
 
 ORDER
 
 1
 IT IS HEREBY ORDERED that the opinion filed June 25, 2003, and published at 334 F.3d 796, is amended as follows: 1. Page 798, second paragraph, end of the second sentence which concludes "the County") — insert the following sentence:
 
 
 2
 He alleged that the County had pursued a "go tough on Nesbitt" policy which encompassed several distinct constitutional violations.
 
 
 3
 2. Page 798, second paragraph, clause that ends with "were not imposed on similarly situated property owners;" — insert after "owners;" a reference to footnote 1. Then, at the bottom of page 798, insert as footnote 1 the following:
 
 
 4
 1. The equal protection count of Nesbitt's complaint draws on the same series of events that underlie his First Amendment count; he alleges
 
 
 5
 that this improper conduct [not imposed on similarly situated persons] was pursuant to a County policy and/or custom under which County officers and policymakers directed that planning regulations be implemented in a retaliatory and disparate fashion as against Plaintiffs, based on Plaintiffs' protected activities, and under which County officers and policymakers ratified said disparate treatment of Plaintiffs.
 
 
 6
 3. Page 799, end of the second full paragraph that concludes with the words "permitting delays have lengthened." — add the following sentence:
 
 
 7
 He alleges that Planning Department staff members admitted that, due to "political pressure," they were applying a "go tough on Nesbitt" policy.
 
 
 8
 4. Page 800, after the citation to Norco Constr., Inc., in the upper, left-hand portion of the page, at the end of the paragraph, change the period to a semi-colon and add: "; Hoehne v. County of San Benito, 870 F.2d 529, 532 (9th Cir.1989)."
 
 
 9
 5. Page 802, headnote [6], line 9 of the paragraph that begins "Although the County" — delete the parenthetical that begins "e.g., restricting him from playing" and ends "develop his property." Replace that parenthetical with:
 
 
 10
 (e.g., retaliation for exercising his First Amendment rights and restricting him from playing polo on his property for nine years while waiting for a major conditional use permit).
 
 
 11
 6. Page 802, upper right-hand portion of the page, at the end of the paragraph that concludes "demands made on homeowner)." — change the period to a semi-colon and add:
 
 
 12
 see also id. at 565-66 (Breyer, J., concurring) ("This case ... does not directly raise the question whether the simple and common instance of a faulty zoning decision would violate the Equal Protection Clause. That is because the Court of Appeals found that in this case respondent had alleged an extra factor as well — a factor that the Court of Appeals called `vindictive action,' `illegitimate animus,' or `ill will.'").
 
 
 13
 7. Page 802, fourth full paragraph that begins "The fact that Nesbitt's constitutional claims arise" — delete the entire paragraph and replace it with the following:
 
 
 14
 Our decision today does not overrule or limit the traditional ripeness test for "as applied" takings claims or claims for which the analysis depends upon such claims. See S. Pac. Transp., 922 F.2d at 507; Norco Constr., 801 F.2d at 1145; Hoehne, 870 F.2d at 532. Rather, due to the egregious facts Nesbitt has alleged (e.g., the Planning Department staff members' admission of a "go tough" policy and the County's nine-year delay in reaching a decision on the major conditional use permit for his recreational polo field), we conclude that this case is directly analogous to Harris, which reasoned that: Even if the County has not made a final and authoritative determination of the development allowed on Harris' property, he has been deprived of the commercial use of his land.... The fee and the deprivation of the commercial use of his land amount to actual, concrete injuries which are separate from any taking Harris may have suffered. These injuries thus have already occurred and do not depend on the finality of the County's determination of the permissible uses of his property. Therefore, because Harris' procedural due process claim does not directly arise from, or rely on, his taking claim, we hold that it is not subject to the ripeness constraints applicable to regulatory takings, and we may review it.
 
 
 15
 904 F.2d at 501 (emphasis added); cf. Herrington v. County of Sonoma, 834 F.2d 1488, 1495 (9th Cir.1987), amended by 857 F.2d 567 (1988). Similarly, Nesbitt's alleged First Amendment, procedural due process, and equal protection injuries stem from the retaliation he claims. As in Harris, these alleged injuries are separate from any purported taking. They are also independent of whether or not the County's decisionmaking has been completed.
 
 
 16
 In the same vein, we have considered a complaint by landowners whose motel was shut down by the City of San Bernardino as a health and safety hazard. Patel v. Penman, 103 F.3d 868, 874 (9th Cir.1996). The Patel plaintiffs argued that the City unfairly targeted their property with the purpose of driving them out of business. Their complaint alleged, inter alia, claims under 42 U.S.C. § 1983 for violations of procedural and substantive due process and equal protection. Patel, 103 F.3d at 873. On appeal, we affirmed summary judgment in favor of the City on the substantive due process claim because that claim was preempted by the Takings Clause. Id. at 873-75. We also affirmed summary judgment in favor of the City on the related equal protection claim, but did so by reaching the merits, concluding that the petitioners had "offered absolutely no evidence that they were treated differently from others who were similarly situated." Id. at 877. On the procedural due process claim, which had proceeded to trial and resulted in a verdict in favor of the City, we reversed because "[n]o evidence whatsoever was presented to the jury to prove that the [petitioners] were given notice and an opportunity to be heard after the closure of the motel." Id. at 878.
 
 
 17
 Thus, in certain limited and appropriate circumstances, claims under 42 U.S.C. § 1983 concerning land use may proceed even when related Fifth Amendment "as applied" taking claims are not yet ripe for adjudication. See also Kawaoka v. City of Arroyo Grande, 17 F.3d 1227, 1233, 1238-41 (9th Cir. 1994) (reaching the merits of the appellants' equal protection claim based on alleged racial animus, even though we found the companion "as applied" takings challenge unripe under Williamson). The fact that Nesbitt's constitutional claims arise in the context of the County's permitting process does not render those claims "unripe," so long as Nesbitt otherwise meets ripeness requirements.
 
 
 18
 8. Page 803, upper left-hand portion of the page, end of the paragraph following the cite to Harris, 904 F.2d at 501, insert a reference to footnote 5, and at the bottom of the page insert as footnote 5:
 
 
 19
 5. While we conclude that Nesbitt's allegations are not subject to the Williamson finality requirements applicable to "as applied" taking claims, we do not thereby decide that his First Amendment, procedural due process, and equal protection claims are exempt from general ripeness requirements, nor do we express any opinion on the merits of those claims. Thus, our decision affirms our intention that "[t]he Courts of Appeals were not created to be `the Grand Mufti of local zoning boards,' nor do they `sit as super zoning boards or zoning boards of appeals.'" Dodd v. Hood River County, 136 F.3d 1219, 1230 (9th Cir.1998) (citing Hoehne, 870 F.2d at 532; Raskiewicz v. Town of New Boston, 754 F.2d 38, 44 (1st Cir.1985)) (alterations omitted).
 
 
 20
 IT IS FURTHER ORDERED that with the foregoing amendments, Judge Berzon has voted to deny the petition for rehearing and for rehearing en banc. Judges Hall and Thompson have voted to deny the petition for rehearing and have recommended denial of the petition for rehearing en banc. The full court has been advised of the petition for court rehearing en banc, and no judge of the court has requested en banc rehearing. See Fed.R.App. P. 35(b).
 
 
 21
 The petitions for panel rehearing and for rehearing by the court en banc are DENIED.
 
 
 22
 IT IS FURTHER ORDERED that no further petitions for rehearing or for rehearing en banc may be filed.
 
 OPINION
 
 23
 DAVID R. THOMPSON, Circuit Judge.
 
 
 24
 Patrick M. Nesbitt and associated entities Carpinteria Valley Farms, Ltd., Yeager Holdings, Inc., and the Patrick M. Nesbitt Family Trust (collectively, "Nesbitt") own land in Santa Barbara County, California. Nesbitt wanted to develop the land in a variety of ways, including building a personal residence on it and using part of the property as a private polo field. The County imposed a number of requirements on this planned development which included, inter alia, requiring Nesbitt to apply for a major conditional use permit to play polo on the property and requiring him to accept numerous conditions for issuance of a residential building permit.
 
 
 25
 After a lengthy period of trying to resolve his differences with the County, Nesbitt filed the present action under 42 U.S.C. § 1983. He sued the County of Santa Barbara, its Planning and Development Department, and employees of that Department (collectively, "the County"). He alleged that the County had pursued a "go tough on Nesbitt" policy which encompassed several distinct constitutional violations. He alleged that the County violated his First Amendment rights of free speech and free association by impeding his use and development of the property in retaliation for his participation in protected activities; violated his right to equal protection guaranteed by the Fourteenth Amendment by imposing conditions on the use of his property that were not imposed on similarly situated property owners;[1] and violated his Fourteenth Amendment right to procedural due process by depriving him of the right to have land use determinations made by a fair and impartial decisionmaker.[2]
 
 
 26
 The district court dismissed all of Nesbitt's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). The court determined that most of the events relied upon by Nesbitt to support his claims were time-barred. As to those events that were not time-barred, the district court characterized the claims they allegedly supported as "as applied" takings claims, which were not ripe for judicial review under Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985).
 
 
 27
 We agree with the district court's decision as to the events it found to be time-barred. With regard to the events which are not time-barred, however, we hold that the claims they allegedly support are not takings claims within the meaning of Williamson, but instead are independent § 1983 claims which are ripe for review under Harris v. County of Riverside, 904 F.2d 497, 501 (9th Cir.1990). Accordingly, we affirm the judgment of the district court in part, reverse in part and remand for further proceedings.
 
 FACTS
 
 28
 Since 1994, Nesbitt has owned the property known as 2800 Via Real in Carpinteria, Santa Barbara County, California ("the property"). He alleges that the County, its Planning Department, and the individual defendants have impeded his development of the property by engaging in "a continuous campaign of unlawful and discriminatory conduct in violation of [his] civil rights." This alleged campaign has included delaying processing of applications for coastal development permits, imposing requirements not imposed on similarly situated property owners and not justified by conditions on Nesbitt's property, imposing unlawful fines and fees, and delegating the County's power to regulate land use to members of non-governmental community associations.
 
 
 29
 Nesbitt alleges that he has been "extremely vocal" about the treatment accorded him by the County, speaking out at public meetings, in local newspapers, and at various public fora. In 1998, the Lambert Road Homeowners' Association, a group with which Nesbitt is publicly allied, sued the owners of nearby property ("Pacifica") for breach of the neighborhood "CC & Rs" and "to halt the nuisances being conducted on the [p]roperty." Pacifica's owners are supporters of a member of the County Board of Supervisors. Nesbitt alleges that as he has spoken out, the County's conditions and restrictions on his property have increased and become more unreasonable and that permitting delays have lengthened. He alleges that Planning Department staff members admitted that, due to "political pressure," they were applying a "go tough on Nesbitt" policy.
 
 
 30
 In his complaint, Nesbitt asserted that the County's campaign included, but was not limited to, seven incidents. He alleged that the County improperly treated a portion of his property as an environmentally sensitive butterfly habitat; delayed issuance of a grading permit and imposed discriminatory conditions on the permit; imposed unwarranted archeological requirements; arbitrarily favored Pacifica by imposing on Nesbitt's property more exacting requirements than those imposed on Pacifica's nearby property; required Nesbitt to comply with the wishes of advisory community groups in order to receive development permits; required Nesbitt to apply for a major conditional use permit in order to use a portion of his property for private, recreational polo — a requirement not imposed upon sixteen similarly situated private polo fields in the County — and then failed to act on his application for the permit; and imposed discriminatory conditions on approval of a building permit for his single family residence on the property, including the requirement that he use a unique measurement methodology in calculating the size of his proposed structure and that he dismiss an appeal from the denial of his original building permit application and submit a new application for a smaller residence.
 
 
 31
 The district court determined that all the incidents Nesbitt complained of were barred by the statute of limitations except the last two — his contention that the County wrongfully required him to apply for a major conditional use permit to use part of his property as a private polo field and then failed to act on the application; and his contention that the County attached discriminatory conditions to issuance of his residential building permit. As to these two contentions, the district court held that Nesbitt's claims were timely, but were fundamentally "as applied" takings claims. Applying the ripeness test applicable to such claims, the court found them unripe for judicial review because the County had not rendered final decisions on the polo field permit or the appeal of the original residential building permit. See Norco Constr., Inc. v. King County, 801 F.2d 1143, 1145 (9th Cir.1986); Hoehne v. County of San Benito, 870 F.2d 529, 532 (9th Cir.1989).
 
 
 32
 In this appeal, Nesbitt contends that all of his claims are timely under the "continuing violations" doctrine. He also argues that the ripeness doctrine applicable to "as applied" takings claims is not applicable because he has alleged separate and distinct constitutional violations. Finally, he argues the district court violated his right to due process by dismissing his claims without oral argument.
 
 Analysis
 
 A. Statute of Limitations
 
 
 33
 The applicable statute of limitations for actions brought pursuant to 42 U.S.C. § 1983 is the forum state's statute of limitations for personal injury actions. Knox v. Davis, 260 F.3d 1009, 1012 (9th Cir. 2001) (citing Wilson v. Garcia, 471 U.S. 261, 276, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985)). Thus, in California, the statute of limitations applicable to all of Nesbitt's claims is one year. Id. at 1013 (citing Cal.Code Civ. Pro. § 340(3); Fink v. Shedler, 192 F.3d 911, 914 (9th Cir.1999)). Because Nesbitt's original complaint was filed on September 20, 2000, the district court correctly determined that "claims grounded in discriminatory acts occurring before September 20, 1999 are time barred." The district court further held that the "continuing violation" doctrine could not save claims grounded in these acts because the acts complained of were not sufficiently related to establish a continuing violation.
 
 
 34
 At the time the district court rendered its decision, a plaintiff could invoke the continuing violation doctrine by showing a "series of related acts against one individual." Gutowsky v. County of Placer, 108 F.3d 256, 259 (9th Cir.1997) (citing Green v. Los Angeles County Superintendent of Schs., 883 F.2d 1472, 1480 (9th Cir.1989)). After the district court rendered its decision, the Supreme Court invalidated the "related acts" method of establishing a continuing violation, stating that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).
 
 
 35
 Although Morgan was a Title VII case, and the present case is a § 1983 action, we have applied Morgan to bar § 1983 claims predicated on discrete time-barred acts, not-withstanding that those acts are related to timely-filed claims. RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045, 1061 (9th Cir.2002).
 
 
 36
 Here, Nesbitt alleges a number of discrete acts on the part of the County, each of which allegedly violated Nesbitt's constitutional rights. All of these discrete acts, except those pertaining to the polo field application and the residential building permit, occurred outside of the one-year statute of limitations period and are time-barred. On the basis of the allegations set forth in Nesbitt's complaint, the district court reached the correct result when it determined that the timebarred acts could not be used to support claims of constitutional violations under 42 U.S.C. § 1983.[3] Nesbitt may use these time barred acts, however, as evidence to establish motive and to put his timely-filed claims in context. RK Ventures, 307 F.3d at 1062.
 
 
 B. Ripeness
 
 
 37
 In ruling that Nesbitt's timely-filed equal protection, due process, and retaliation claims pertaining to the residential building permit and polo field application were not ripe for judicial review, the district court determined that the gravamen of Nesbitt's complaint was an "as applied" takings challenge to the County's land use policies. Accordingly, the court applied the Williamson finality rules to these claims. See Williamson, 473 U.S. at 186, 105 S.Ct. 3108; S. Pac. Transp. Co. v. City of Los Angeles, 922 F.2d 498, 507 (9th Cir.1990).[4] The district court held that there had been no final agency decision on either the polo field application or the residential building permit (the latter because Nesbitt had withdrawn his appeal for a larger residence, thus preventing that claim from ever ripening), and therefore the claims grounded in these events were not ripe for review. We disagree with this analysis because the constitutional claims Nesbitt asserted pertaining to the polo field application and the residential building permit are not "as applied" takings claims. Rather, they are separate claims supported by allegations of discrete constitutional violations.
 
 
 38
 With regard to the residential building permit, Nesbitt alleged that the County imposed unreasonable requirements that made it difficult to perform the excavation necessary at the residence site, issued baseless zoning violations relating to a drainage culvert, withdrew "final approval" of the residence permit in response to political pressure from community members, required Nesbitt to withdraw his appeal of the denied permit, and required him — if he wanted approval upon re-application — to use a measurement methodology that reduced the maximum allowable size of his proposed structure.
 
 
 39
 With regard to the polo field application, Nesbitt alleged that the County required not just a coastal development permit for a sod field, as had been required of property owners of sixteen nearby recreational polo fields, but required that he obtain a major conditional use permit even though major conditional use permits had previously been required only for commercial polo fields. Nesbitt also alleged that the County threatened him with a fine of $25,000 per day if polo were played on his property without obtaining the demanded major conditional use permit, required him to pay fees to cover the cost of investigating "violations," and informed him that the permit, when and if issued, would include prohibitions and restrictions on the use of the property for private parties and charitable events.
 
 
 40
 If, as Nesbitt alleged, the County's requirements, conditions, delays and fees were imposed in retaliation for his exercise of his First Amendment rights to publicly criticize the County and to access the courts, Nesbitt suffered harm thereby and did not have to await further action by the County. See Norco Constr., 801 F.2d at 1146.
 
 
 41
 The same may be said of Nesbitt's claims that the County's actions violated his Fourteenth Amendment rights to equal protection and due process of law. Nesbitt alleged that the acts relating to the polo field application and the residential building permit denied him equal protection of the law because they imposed on him conditions not imposed on similarly situated property owners and not justified by conditions on his property. He alleged he was denied procedural due process because the County's decisions regarding his applications had either been delegated to non-governmental entities or had been made by biased and unfair decisionmakers motivated to retaliate against him.
 
 
 42
 Although the County has granted Nesbitt eleven development permits, his challenge is to the procedure he had to endure to get those permits. Even if the County relented today and issued all of the permits Nesbitt has applied for, he still would have been injured by the treatment he allegedly received and which caused him harm (e.g., retaliation for exercising his First Amendment rights and restricting him from playing polo on his property for nine years while waiting for a major conditional use permit). Cf. Vill. of Willowbrook v. Olech, 528 U.S. 562, 565, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (allegations of irrational and wholly arbitrary treatment are "sufficient to state a claim for relief under traditional equal protection analysis" even after village relented from demands made on homeowner; see also id. at 565-66, 120 S.Ct. 1073 (Breyer, J., concurring)) ("This case ... does not directly raise the question whether the simple and common instance of a faulty zoning decision would violate the Equal Protection Clause. That is because the Court of Appeals found that in this case respondent had alleged an extra factor as well — a factor that the Court of Appeals called `vindictive action,' `illegitimate animus,' or `ill will.'").
 
 
 43
 Our decision today does not overrule or limit the traditional ripeness test for "as applied" takings claims or claims for which the analysis depends upon such claims. See S. Pac. Transp., 922 F.2d at 507; Norco Constr., 801 F.2d at 1145; Hoehne, 870 F.2d at 532. Rather, due to the egregious facts Nesbitt has alleged (e.g., the Planning Department staff members' admission of a "go tough" policy and the County's nine-year delay in reaching a decision on the major conditional use permit for his recreational polo field), we conclude that this case is directly analogous to Harris, which reasoned that:
 
 
 44
 Even if the County has not made a final and authoritative determination of the development allowed on Harris' property, he has been deprived of the commercial use of his land.... The fee and the deprivation of the commercial use of his land amount to actual, concrete injuries which are separate from any taking Harris may have suffered. These injuries thus have already occurred and do not depend on the finality of the County's determination of the permissible uses of his property. Therefore, because Harris' procedural due process claim does not directly arise from, or rely on, his taking claim, we hold that it is not subject to the ripeness constraints applicable to regulatory takings, and we may review it.
 
 
 45
 904 F.2d at 501 (emphasis added); cf. Herrington v. County of Sonoma, 834 F.2d 1488, 1495 (9th Cir.1987), amended by 857 F.2d 567 (1988). Similarly, Nesbitt's alleged First Amendment, procedural due process, and equal protection injuries stem from the retaliation he claims. As in Harris, these alleged injuries are separate from any purported taking. They are also independent of whether or not the County's decision-making has been completed.
 
 
 46
 In the same vein, we have considered a complaint by landowners whose motel was shut down by the City of San Bernardino as a health and safety hazard. Patel v. Penman, 103 F.3d 868, 874 (9th Cir.1996). The Patel plaintiffs argued that the City unfairly targeted their property with the purpose of driving them out of business. Their complaint alleged, inter alia, claims under 42 U.S.C. § 1983 for violations of procedural and substantive due process and equal protection. Patel, 103 F.3d at 873. On appeal, we affirmed summary judgment in favor of the City on the substantive due process claim because that claim was preempted by the Takings Clause. Id. at 873-75. We also affirmed summary judgment in favor of the City on the related equal protection claim, but did so by reaching the merits, concluding that the petitioners had "offered absolutely no evidence that they were treated differently from others who were similarly situated." Id. at 877. On the procedural due process claim, which had proceeded to trial and resulted in a verdict in favor of the City, we reversed because "[n]o evidence whatsoever was presented to the jury to prove that the [petitioners] were given notice and an opportunity to be heard after the closure of the motel." Id. at 878.
 
 
 47
 Thus, in certain limited and appropriate circumstances, claims under 42 U.S.C. § 1983 concerning land use may proceed even when related Fifth Amendment "as applied" taking claims are not yet ripe for adjudication. See also Kawaoka v. City of Arroyo Grande, 17 F.3d 1227, 1233, 1238-41 (9th Cir.1994) (reaching the merits of the appellants' equal protection claim based on alleged racial animus, even though we found the companion "as applied" takings challenge unripe under Williamson). The fact that Nesbitt's constitutional claims arise in the context of the County's permitting process does not render those claims "unripe," so long as Nesbitt otherwise meets ripeness requirements.
 
 Conclusion
 
 48
 We affirm the district court's dismissal of Nesbitt's claims grounded in events that predate September 20, 1999. As presently alleged, those claims are barred by the statute of limitations and were properly dismissed under Morgan, 536 U.S. at 113, 122 S.Ct. 2061, and RK Ventures, 307 F.3d at 1061. Evidence of the acts supporting such claims, however, may be used to establish motive and to put Nesbitt's timely-filed claims in context. Id. at 1062.
 
 
 49
 We reverse the district court's dismissal of Nesbitt's claims of retaliation and denial of equal protection and due process grounded in acts occurring after September 20, 1999 pertaining to the polo field application and the residential building permit. These claims are not "as applied" takings claims. Rather, they are separate claims grounded in allegations of discrete constitutional violations. See Harris, 904 F.2d at 501.[5]
 
 
 50
 AFFIRMED in part; REVERSED in part, and REMANDED to the district court for further proceedings consistent with this opinion.[6] The appellants shall have and recover their costs on appeal.
 
 
 
 Notes:
 
 
 [1]
 The equal protection count of Nesbitt's complaint draws on the same series of events that underlie his First Amendment count; he alleges
 that this improper conduct [not imposed on similarly situated persons] was pursuant to a County policy and/or custom under which County officers and policymakers directed that planning regulations be implemented in a retaliatory and disparate fashion as against Plaintiffs, based on Plaintiffs' protected activities, and under which County officers and policymakers ratified said disparate treatment of Plaintiffs.
 
 
 [2]
 Nesbitt raises only a procedural, not a substantive, due process claimCf. Armendariz v. Penman, 75 F.3d 1311, 1324 (9th Cir.1996) (en banc).
 
 
 [3]
 InMorgan, the Court recognized that prior Ninth Circuit precedent allowed plaintiffs two methods by which to avail themselves of the continuing violation doctrine. Morgan, 536 U.S. at 107, 122 S.Ct. 2061. Although the Court invalidated the "related acts" method, it declined to address the "systematic pattern-or-practice" method. Id. at 115 n. 9, 122 S.Ct. 2061. Moreover, the Court distinguished "hostile environment" claims and recognized that proof of such claims may include reliance on otherwise time-barred incidents. Id. at 115, 122 S.Ct. 2061 ("The `unlawful employment practice' therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own.") On remand, the district court may consider whether to allow Nesbitt to amend his complaint to allege facts in support of these alternative theories suggested by Morgan. See Lyons v. England, 307 F.3d 1092, 1107 n. 8 (9th Cir.2002). We express no opinion, however, as to whether either theory would be applicable in the context of this case.
 
 
 [4]
 For an "as applied" taking claim to be ripe for review, there must be a final decision regarding the challenged agency action and the aggrieved party must have sought compensation through the procedures the State has provided (if any)Williamson, 473 U.S. at 186, 195, 105 S.Ct. 3108.
 
 
 [5]
 While we conclude that Nesbitt's allegations are not subject to theWilliamson finality requirements applicable to "as applied" taking claims, we do not thereby decide that his First Amendment, procedural due process, and equal protection claims are exempt from general ripeness requirements, nor do we express any opinion on the merits of those claims. Thus, our decision affirms our intention that "[t]he Courts of Appeals were not created to be `the Grand Mufti of local zoning boards,' nor do they `sit as super zoning boards or zoning boards of appeals.'" Dodd v. Hood River County, 136 F.3d 1219, 1230 (9th Cir. 1998) (citing Hoehne, 870 F.2d at 532; Raskiewicz v. Town of New Boston, 754 F.2d 38, 44 (1st Cir.1985)) (alterations omitted).
 
 
 [6]
 We reject Nesbitt's contention that the district court violated his right to due process by dismissing his claims under Federal Rule of Civil Procedure 12(b)(6) without oral argument. The district court was within its discretion to dispense with oral argumentSee Spradlin v. Lear Siegler Mgmt. Servs. Co., 926 F.2d 865, 869 (9th Cir.1991); Biotics Research Corp. v. Heckler, 710 F.2d 1375, 1379 (9th Cir.1983); Morrow v. Topping, 437 F.2d 1155, 1156-57 (9th Cir.1971).