DROVERS BANK OF CHICAGO, as Trustee, Plaintiff-Appellant, v. THE VILLAGE OF HINSDALE et al., Defendants-Appellees.

Second District   No. 2—90—0206

Opinion filed January 31, 1991.—Rehearing denied March 8, 1991.

Gary L. Taylor, of Rathje, Woodward, Dyer & Burt, of Wheaton (Tracy D. Kasson, of counsel), for appellant.

Clifford L. Weaver, Mark E. Burkland, and Jeffrey S. McCutchan, all of Burke, Bosselman & Weaver, and William E. Ryan and Arthur N. Christie, both of Burke & Ryan, both of Chicago, for appellees.

JUSTICE INGLIS delivered the opinion of the court:

Plaintiff, Drovers Bank of Chicago, acting as trustee under a trust agreement known as trust No. 82158, filed a complaint against defendants, the Village of Hinsdale (Village) and its board of trustees, alleging that the Village's denial of plaintiff's development plan was arbitrary and capricious and violated plaintiff's fourteenth amendment equal protection and substantive due process rights. The trial court dismissed the last two counts of plaintiff's third amended complaint which sought damages pursuant to section 1983 of the Civil Rights Act (42 U.S.C. §1983 (1988)). Plaintiff timely appeals, and the following issues are raised: (1) whether plaintiff's allegations are ripe for adjudication; (2) whether plaintiff sufficiently alleged a valid fourteenth amendment substantive due process claim so as to recover section 1983 damages; (3) whether plaintiff sufficiently alleged a valid

fourteenth amendment equal protection claim so as to recover section 1983 damages; and (4) whether plaintiff has alleged a viable claim for damages when the complaint alleges that defendants' ordinances are vague and indefinite. We affirm.

■ Because this appeal is from a dismissal order, the allegations of the complaint must be considered true for purposes of the appeal. (*Fernandes v. Margolis* (1990), 201 Ill. App. 3d 47, 48.) In the complaint, plaintiff alleges that it is the legal owner of one acre of real property located on the east side of York Road, approximately 400 feet north of Salt Creek. The subject realty is within zone F planned development district. On January 26, 1984, plaintiff filed with the Village an application of development for the subject realty and requested the approval of a comprehensive plan of development and the issuance of a certificate of appropriateness.

On February 13, 1984, a public hearing on plaintiff's application was held. At the hearing, plaintiff submitted its comprehensive plan proposing the development, construction, and operation of a two-story office building with underground and above-ground parking facilities, consisting of 30,524 square feet in office space and a total of 111 parking spaces. The Village Plan Commission (Commission) recommended that the Board of Trustees (Board) deny the application. On March 6, 1984, the Board voted to accept the recommendation of the Commission, and plaintiff's application for approval of the comprehensive plan and the issuance of a certificate of appropriateness was denied. The Board determined that plaintiff's proposed development exceeded the allowable intensity of use under the Village's zoning ordinance. (Hinsdale Zoning Ordinance ch. ___, §10—5D—5 (19___).) "Intensity of use," as defined in the ordinance, is the "proportionate amount of area of a lot which is or may be occupied by main and accessory buildings in relation to the total area of the lot." (Hinsdale Zoning Ordinance ch. ___, §10—1—2 (19___).) "Building area" is defined as the "total of the maximum horizontal area of a building and its accessory buildings if projected to ground level." (Hinsdale Zoning Ordinance ch. ___, §10—1—2 (19___).) The Board determined that, when the area of plaintiff's office building, including the underground parking garage, was all projected to ground level in accordance with the regulation, the development violated the F district intensity of use standards.

On March 15, 1984, plaintiff filed its first complaint against defendants. That complaint consisted of three counts. The first two counts sought injunctive and declaratory relief, while the third count sought monetary relief under section 1983 of the Civil Rights Act. In

sum, plaintiff alleged that defendants misinterpreted and misapplied the ordinance's provisions pertaining to calculating the realty's intensity of use. Plaintiff maintained that parking facilities, whether located at ground level or below, were not to be included in the calculation. In including them, plaintiff argues that defendants' actions were arbitrary and capricious, thereby denying plaintiff due process and equal protection of the law under the fifth and fourteenth amendments to the United States Constitution and sections 2 and 15 of article I of the Illinois State Constitution (U.S. Const., amends. V, XIV; Ill. Const. 1970, art. I, §§2, 15). Plaintiff further alleged that defendants knew that the parking facilities should not be included in calculating intensity of use under the ordinance, but included them anyway, thus constituting a willful and intentional abuse of power and authority.

On May 22, 1984, defendants filed a motion to strike and dismiss plaintiff's complaint, which the trial court denied. Thereafter, defendants answered the complaint and filed nine affirmative defenses to count III. Defendants then filed a motion for judgment on the pleadings. On March 14, 1986, the trial court granted defendants' motion as to count III, finding that the civil rights claim was premature pursuant to *Williamson County Regional Planning Comm'n v. Hamilton Bank* (1985), 473 U.S. 172, 190, 87 L. Ed. 2d 126, 141, 105 S. Ct. 3108, 3118.

On July 30, 1987, plaintiff filed a motion for leave to file an amended complaint. Under the amendment, counts I and II were identical to counts I and II of the original complaint. Counts III through VI attacked the constitutionality of the Village's ordinances, and count VII of the amended complaint realleged the civil rights cause of action against defendants.

On September 8, 1987, defendants filed a motion to dismiss counts III through VII of plaintiff's amended complaint. The trial court denied defendants' motion as to counts III through VI. However, defendants' motion was granted as to plaintiff's civil rights claim in count VII of the amended complaint, the court finding that it had previously been ruled upon as count III of the original complaint.

Defendants then filed answers to counts I through V of plaintiff's amended complaint. Count VI was dismissed by the trial court as a result of a motion to reconsider filed by defendant. Plaintiff then moved for summary judgment on counts III, IV and V of the amended complaint, which the trial court denied.

On October 4, 1988, plaintiff was granted leave to file its second amended complaint. Counts I through V of the second amended com-

plaint were identical to the first amended complaint, and counts VI through IX sought civil rights damages. Defendants filed motions to dismiss under sections 2—615 and 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, pars. 2—615, 2—619). On May 30, 1989, the trial court granted defendants' motions and dismissed with prejudice counts VI through IX of plaintiff's second amended complaint. In doing so, the court cited *Coniston Corp. v. Village of Hoffman Estates* (7th Cir. 1988), 844 F.2d 461, 467, and explained that "plaintiff apparently believes if it uses the magic words it can meet the constitutional test [entitling it to application of Section 1983]." The court found that the facts, as pleaded by plaintiff, were conclusory and, thus, insufficient.

After the court's ruling, plaintiff filed a motion for leave to amend the complaint on the basis of the trial court's statement that the facts pleaded were conclusory. The trial court granted plaintiff's motion, and on August 8, 1989, plaintiff filed its third amended complaint. The first five counts of this complaint are the same as counts I through V of the second amended complaint. These counts basically allege that the Village's ordinances are unconstitutional and the board of trustees misinterpreted and misapplied the ordinance provisions when calculating the subject realty's intensity of use. Counts VI and VII of the third amended complaint allege that plaintiff's civil rights were violated. Specifically, in count VI, plaintiff alleges that defendants' application of the intensity of use provisions was selective in nature, not uniform, and was done for the sole purpose of defeating plaintiff's development plan, thereby denying plaintiff its right to due process of law and equal protection. Plaintiff alleges that defendants had full knowledge that there was no basis for the delineation between below ground level parking as opposed to ground level parking in calculating intensity of use. Plaintiff further alleges that defendants knew that plaintiff's plan fully complied with the ordinance, but nonetheless willfully misapplied the intensity of use provisions and denied plaintiff's application. In count VII, plaintiff alleges that the applicable zoning ordinances are vague and indefinite.

On August 24, 1989, defendant filed a section 2—615 (Ill. Rev. Stat. 1989, ch. 110, par. 2—615) motion to strike and dismiss counts VI and VII of plaintiff's third amended complaint. The trial court granted defendants' motion and dismissed the two counts with prejudice. The trial court's order contained a finding that, pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)), there was no just reason to delay enforcement or appeal of the order. After plaintiff's

motion for rehearing was denied by the trial court, plaintiff timely filed its notice of appeal.

■■ ■ We first address the issue of whether plaintiff's allegations of civil rights violations are ripe for adjudication, as resolution of this issue may dispose of the cause. The doctrine of ripeness is generally applied to land use cases in order to avoid premature adjudication or review of administrative action. (*Herrington v. County of Sonoma* (9th Cir. 1987), 834 F.2d 1488, *amended opinion* (9th Cir. 1988), 857 F.2d 567, 568.) The United States Supreme Court has held that a constitutional challenge to land use regulations is ripe when the developer has received the planning commission's " 'final, definitive position regarding how it will apply the regulations at issue to the particular land in question.' " (*Herrington*, 857 F.2d at 568-69, quoting *MacDonald, Sommer & Frates v. County of Yolo* (1986), 477 U.S. 340, 351, 91 L. Ed. 2d 285, 296, 106 S. Ct. 2561, 2567.) In determining that a final decision exists, it must be shown, at a minimum, that there was: (1) a rejected development plan, and (2) a denial of a variance. (*Herrington*, 857 F.2d at 569.) However, a landowner may avoid the final decision requirement if attempts to comply with the requirement would be futile. *Herrington*, 857 F.2d at 569.

Plaintiff first argues that the finality requirement only applies to "taking" claims brought pursuant to the fifth amendment just compensation clause and not to fourteenth amendment substantive claims. In support, plaintiff cites to *P.L.S. Partners, Women's Medical Center of Rhode Island, Inc. v. City of Cranston* (D.R.I. 1988), 696 F. Supp. 788. In *P.L.S. Partners*, the plaintiff corporation proposed the construction of an outpatient abortion facility. Under the municipality's ordinances, "health care facilities," defined in part as those facilities providing outpatient care, were automatically permitted within the specified commercial zone, while "hospitals," defined in part as those facilities providing inpatient care, required a special use permit. (*P.L.S. Partners*, 696 F. Supp. at 790.) The plaintiff brought an action against the defendant municipality when it frustrated construction of the facility by requiring plaintiff to obtain a special use permit to operate as a hospital, thereby violating due process and equal protection rights of women. (*P.L.S. Partners*, 696 F. Supp. at 791-92.) The Rhode Island district court determined that the cause was ripe for review, despite the plaintiff's failure to seek the special use permit, since the plaintiff's substantive due process challenge focused exclusively on the defendant's decision to require the permit. (*P.L.S. Partners*, 696 F. Supp. at 795.) The plaintiff

maintained that that decision erected "artificial and gratuitous obstacles in the path of a woman's right to obtain an abortion, thereby impinging on privacy rights." (*P.L.S. Partners*, 696 F. Supp. at 796.) The court determined that because the plaintiff alleged that the act of the official infringed on some substantive, constitutional right other than one premised on the takings clause, the ripeness doctrine did not apply. *P.L.S. Partners*, 696 F. Supp. at 796.

■■ ■ Initially, we note that our research indicates that the *P.L.S. Partners* opinion has never been cited by any court for authority or otherwise. In fact, several circuit courts have specifically held that, regardless of whether the violation alleged is a taking without just compensation or a deprivation of due process or equal protection, the decision of a municipality is not ripe for review unless that decision is final and definite with respect to the property at issue. (*Greenbriar, Ltd. v. City of Alabaster* (11th Cir. 1989), 881 F.2d 1570, 1573; *Hoehne v. County of San Benito* (9th Cir. 1989), 870 F.2d 529, 532; *Unity Ventures v. County of Lake* (7th Cir. 1988), 841 F.2d 770, 775.) The *Hoehne* court explained:

> "[L]and-use planning is not an all-or-nothing proposition. A government entity is not required to permit a landowner to develop property to the full extent it may desire. Denial of the intensive development desired by a landowner does not preclude less intensive, but still valuable development. *** The property owner, therefore, has a high burden of proving that a final decision has been reached by the agency before it may seek compensatory or injunctive relief." (*Hoehne*, 870 F.2d at 532-33.)

We agree with this line of reasoning and reject *P.L.S. Partners* to the extent that it holds to the contrary. Further, we are able to distinguish *P.L.S. Partners* in that the plaintiff in that case alleged a violation of a fundamental constitutional right outside the zoning context (*i.e.*, the right to privacy); no such allegation has been made in the case at bar. Therefore, we find that plaintiff must sufficiently allege that defendants' decision was final in order to avoid dismissal.

■ As stated above, a proper allegation of finality requires at least: (1) a rejected development plan, and (2) a denial of a variance. (*Herrington*, 857 F.2d at 569.) Plaintiff's third amended complaint clearly alleges that its development plan submitted to defendants was rejected. However, nowhere in the complaint is it alleged that plaintiff ever sought a variance. In its brief to this court, plain-

tiff maintains that it requested a textual amendment of the ordinance which would exclude parking from the building area computation. Plaintiff maintains that this amendment was rejected by defendants. In support, plaintiff cites to the exhibits attached to defendants' section 2—615 motion to dismiss plaintiff's second amended complaint and to defendants' memorandum in support of that motion. However, on a motion to dismiss, the court will consider only the well-pleaded facts alleged in the complaint and any exhibits attached thereto. (*Dunn v. Baltimore & Ohio R.R. Co.* (1989), 127 Ill. 2d 350, 372.) Because plaintiff's complaint does not allege that a textual amendment was sought, we may not consider it so for purposes of reviewing the motion to dismiss. Even if we were to consider the proposed amendment, it is not clear that such a proposal would satisfy the variance requirement. Apparently, the amendment was proposed in conjunction with plaintiff's application. This was the single and only time plaintiff presented its plan. We do not find these circumstances to qualify as the type of variance contemplated under the case law. (See *Williamson*, 473 U.S. at 187-90, 87 L. Ed. 2d at 139-41, 105 S. Ct. at 3117-18; *Herrington*, 857 F.2d at 569.) Further, plaintiff has not demonstrated that attempts to comply with the final decision requirement would be futile. Therefore, it is bound to show that the requirement has been met. (*Herrington*, 857 F.2d at 569.) We do not find that plaintiff has made such a showing. See *Herrington*, 857 F.2d at 569.

■■ In arguing that it has made such a showing, plaintiff presents a bootstrap-type argument. Plaintiff maintains that counts I and II contain the necessary ripeness allegations for declaratory relief under the fourteenth amendment, and count VI, which was dismissed, alleges the same fourteenth amendment violation but seeks monetary relief. Plaintiff argues that because defendants answered counts I and II of the second amended complaint, those counts are ripe for review and thus count VI is similarly ripe. However, plaintiff cites no authority in support of its position that answered claims are automatically deemed ripe for review; therefore, that argument is waived. 134 Ill. 2d R. 341(e)(7); *City of Chicago v. Cross City Disposal, Inc.* (1990), 200 Ill. App. 3d 520, 524.

■■ Plaintiff next argues that because count VI attacks the constitutionality of the ordinance on its face, the ripeness doctrine does not apply. (*Bright v. City of Evanston* (1956), 10 Ill. 2d 178, 184-85; *Beacon Hill Farm Associates II Limited Partnership v. Loudoun County Board of Supervisors* (4th Cir. 1989), 875 F.2d 1081, 1084-85.) Initially, we note that it is count VII of plaintiff's third

amended complaint which claims the facial invalidity of the ordinance, not count VI. However, it does appear that plaintiff's statement of the law is accurate. Thus, while we may consider the validity of count VII, count VI of the complaint, which alleges that the ordinance was unconstitutionally applied to plaintiff's property, was properly dismissed.

In count VII, plaintiff argues that a viable claim for damages exists under section 1983 because the applicable ordinances are vague and indefinite. Specifically, count VII attacks certain language from the F zone and Gateway ordinances. The F zoning classification provides that proposed uses will be permitted only upon the presentation of a comprehensive plan of development. In addition, the proposed use must not:

> "A. Cause undue traffic congestion or create a traffic hazard;
>
> B. Create dangerous or objectionable elements so as to adversely affect the character or property values in the adjacent areas;
>
> C. Impair the public health, safety, morals, convenience, comfort prosperity and other aspects of the general welfare of the community." Hinsdale Zoning Ordinance ch. 7, §10—7—1 (19___).

Plaintiff also attacks the Historic Graue Mill Gateway ordinance. Under this ordinance, a developer is to file with the Village clerk an application for a certificate of appropriateness. (Hinsdale Zoning Ordinance ch. 8, §10—8—5 (19___).) The application will then be referred to the Plan Commission by the Village president and Board of Trustees upon verification that the application is complete. (Hinsdale Zoning Ordinance ch. 8, §10—8—8 (19___).) Within 45 days of filing the application, a public hearing will be scheduled. (Hinsdale Zoning Ordinance ch. 8, §10—8—8 (19___).) The Commission shall consider the application, and within 15 days after the hearing is closed, the Commission shall make its decision and issue to the Village president and Board of Trustees its findings and recommendation concerning the proposed Gateway Development Plan. (Hinsdale Zoning Ordinance ch. 8, §10—8—9 (19___).) The president and Board may approve or disapprove the proposed plan or refer the matter back to the Commission for further consideration. (Hinsdale Zoning Ordinance ch. 8, §10—8—10 (19___).) If the plan is approved, the president and Board shall issue a certificate of appropriateness. Hinsdale Zoning Ordinance ch. 8, §10—8—10 (19___).

■ In its complaint, plaintiff alleges that the above ordinances are unconstitutional because they are "vague, indefinite and do not reasonably inform owners of property *** what uses will or will not be applicable but reserves said decision solely to the discretion of the Village Board." Plaintiff argues before this court that if the ordinance is proved to be vague and overly broad, plaintiff is entitled to recover section 1983 damages and section 1988 attorney fees. (See *Chalmers v. City of Los Angeles* (9th Cir. 1985), 762 F.2d 753, 758; *Florida Pawnbrokers & Secondhand Dealers Association, Inc. v. City of Fort Lauderdale* (S.D. Fla. 1989), 711 F. Supp. 1084, 1085; *Fratiello v. Mancuso* (D.R.I. 1987), 653 F. Supp. 775, 792.) However, plaintiff's complaint simply *alleges* a constitutional challenge, which is insufficient to withstand a motion to dismiss. (*Gaines v. Lane* (7th Cir. 1986), 790 F.2d 1299, 1303.) If a complaint alleges that an ordinance, on its face, is inconsistent with a specific provision of the Constitution, that complaint will be dismissed where a thoughtful reading of the ordinance convinces the trial court that it is plainly within the bounds of the Constitution. (*Gaines*, 790 F.2d at 1303.) In the instant case the trial court held that count VII of plaintiff's complaint failed to state a cause of action. We agree. While the cited ordinances do give defendants discretion in approving a proposed plan, they also contain guidelines to be implemented in rendering such a decision. We do not find these to be vague or overly broad.

■ We reject plaintiff's argument that count VII of the complaint cannot be dismissed because it incorporates counts III through V, which allege an action for vagueness and were not dismissed by the trial court. Counts III through V are not at issue on appeal, and we are not bound by the trial court's decision regarding those counts. Plaintiff has cited no authority to the contrary.

For the above-stated reasons, we affirm the judgment of the circuit court.

Affirmed.

REINHARD, P.J., and NICKELS, J., concur.