2021 IL App (2d) 200342-U
Nos. 2-20-0342 & 2-20-0477, cons.
Order filed June 7, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| SHOUB PROPERTIES, LLC, JONATHAN BRAZIER, ANNE BRAZIER, CITIZENS FOR GLEN ELLYN PRESERVATION, and TERMOSJ, LLC, | ) ) ) ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 19-MR-396 |
| VILLAGE OF GLEN ELLYN, GSP DEVELOPMENT, LLC, and 400 MAIN LLC, | ) ) ) ) | |
| Defendants-Appellees, | ) ) | |
| (R. Daniel Conlon, Bishop of Roman Catholic Diocese of Joliet, not individually, but as Successor Trustee under the provisions of a Certain Trust Agreement dated December 31, 1949 and known as the Roman Catholic Diocese Trust, and St. Petronille Parish, Defendants). | ) ) ) ) ) ) ) ) | Honorable Bonnie M. Wheaton, Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices Jorgensen and Brennan concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court erred in dismissing claims based on alleged Accessibility Code violations in a proposed development that included public and private parking garages, and in dismissing one of the plaintiffs, Citizens for Glen Ellyn Preservation, for lack of standing as to those claims. The trial court properly granted summary judgment on claims related to a substantive due process challenge to an approved PUD. Whether the trial court erred in dismissing the plaintiffs, the Braziers, for lack to standing as to the substantive due process claims is moot. The trial court properly dismissed the remaining counts of the complaint.

¶ 2    The plaintiffs, Shoub Properties, LLC (Shoub), Jonathan and Anne Brazier, Termosj, LLC, and Citizens for Glen Ellyn Preservation (Citizens), filed a second amended ten-count complaint against the defendants, the Village of Glen Ellyn, GSP Development, LLC, and 400 Main LLC, seeking to prevent construction of a mixed-use development in downtown Glen Ellyn. The trial court dismissed counts I through VI, IX, and X, on the pleadings and granted summary judgment in favor of the defendants on counts VII and VIII. The trial court also dismissed Citizens and the Braziers for lack of standing. The plaintiffs appeal from these orders. We affirm in part and reverse in part.

¶ 3                                    I. BACKGROUND

¶ 4    The Village of Glen Ellyn is an Illinois home rule unit. The Village established the Historic Preservation Commission of the Village of Glen Ellyn (see Glen Ellyn Code of Ordinances § 2-13-2(A) (adopted April 22, 1991) (available at https://library.municode.com/il/glen_ellyn/codes/code_of_ordinances)) and assigned it several powers and duties (see *id.* § 2-13-2(D)). In 2001, the Village adopted a comprehensive plan to guide and direct future land use decisions. The plan stated that the south Main parking lot in downtown Glen Ellyn was ideal for a new mixed-use retail/residential and parking project to anchor the south end of the downtown area. The plan recommended that current zoning regulations allowing buildings up to 65 feet tall should be reexamined in light of the current predominance of two and three-story buildings.

¶ 5    In 2008, the Village began a collaborative study of the optimal future land uses in its downtown area.  After extensive consideration and review, the Village passed an ordinance approving the 2009 downtown strategic plan.  That plan recommended at least 450 new residential units in the downtown and an increase in office tenant space.  The plan noted that these could be combined in mixed-use buildings and that more residential units could fuel the economy to support existing and future retail businesses.  The plan also recommended the creation of a tax increment financing (TIF) redevelopment district pursuant to the Tax Increment Allocation Redevelopment Act (TIF Act) (65 ILCS 5/11-74.4-1 *et seq*. (West 2006)), and a TIF redevelopment plan to promote private investment into new development.

¶ 6    In 2012, the Village approved a redevelopment plan and project for the central business district, designating the project area at issue and adopting TIF financing for the project area.  The objective was to eliminate blight and infuse new residential population into the downtown to support retail businesses.  In 2013, the Village formed a committee to study the aesthetics of the downtown roadway network and parking areas.  The committee produced a written study and proposed action plan.  In May 2013, the Village approved an ordinance adopting the 2013 downtown streetscape & parking study.  The purpose was to guide future development related to streetscape improvements and public and private parking management in downtown.

¶ 7    The Village owns property designated as 410, 418, and 424 North Main Street in downtown Glen Ellyn.  This property comprises what the parties refer to as the south Main parking lot.  One of the plaintiffs, 400 Main, owns the parcel at 400 North Main Street (the 400 Main parcel).  GSP, a developer, would like to construct the project at issue on both the south Main parking lot and the 400 Main parcel (hereinafter the "subject property").

¶ 8    Citizens for Glen Ellyn Preservation (Citizens) is a not-for-profit corporation with a core purpose of taking collaborative and adversarial efforts to protect the character of downtown Glen Ellyn. Termosj owns land north of the subject property and it has an interest in an alley north of the westerly extension of the subject property that would potentially be included in the territory upon which the Project is constructed. Shoub owns property directly west and south of the subject property. The Braziers own and live in a home that is about 400 feet east-southeast of the subject property. They also own property, referred to as the "Phillips Parcel," that is about 460 feet southwest of the subject property. Shoub and the Braziers were members of Citizens.

¶ 9    The eastern portion of the subject property is adjacent to the Glen Ellyn downtown south historic district, which was listed on the national register of historic places. The eastern portion, with more than 300 feet of frontage on Main street, is in the C5A central retail core subdistrict and the western portion is in the C5B central service subdistrict. The 400 Main parcel had a building on it that was constructed in 1961 and was occupied by the Giesche shoe store (the Giesche building) for many years. The Giesche building was eligible to be on the national register of historic places and was considered a historic resource under the TIF Act. The south Main parking lot offered public parking to businesses and places of worship in the historic district, the Shoub parcel, and the Termosj parcel.

¶ 10    In July 2018, GSP submitted an informal proposal to develop the subject property, which included demolishing the Giesche building and building a structure that contained multiple residential units, commercial units, a public parking garage, a private parking garage, and rooftop terraces for residents (hereinafter the "Project"). On November 12, 2018, the Village's board of trustees adopted ordinance No. 6640, which was a purchase and sales agreement (PSA) to sell the south Main parking lot to GSP. The PSA was contingent on a redevelopment agreement that called

for development of the subject property by GSP and a conveyance to the Village of over 100 public parking spaces within the development area. Under the PSA, the Village remained the owner of the south Main parking lot and possessed a right of reverter.

¶ 11    On January 28, 2019, the Village adopted ordinance No. 6671, which approved a redevelopment agreement (RDA) for the subject property, a $1.84 million TIF parking incentive and a $1.36 million additional TIF incentive that allowed GSP to obtain reimbursement of certain expenses. On the same day, the Village adopted the preliminary planned unit development (PUD) ordinance, No. 6672, which approved the Project plans. Those plans included deviations for height, size of parking spaces, drive aisle width, lot coverage, loading zone size and brightness of lighting. On April 8, 2019, ordinance No. 6690 was adopted, which approved the final PUD ordinance.

¶ 12    The plaintiffs filed their original complaint on April 5, 2019 and the amended complaint on June 3, 2019. The amended complaint stated 15 counts for declaratory, injunctive, and other relief, essentially challenging the ordinances passed in relation to the Project. The defendants filed a combined motion, pursuant to section 2-619.1 the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2018)), to dismiss the amended complaint and to dismiss Citizens and Braziers for lack of standing. On September 23, 2019, the trial court granted the motion as to all counts of the complaint, with leave to replead, except for counts I and II, which were dismissed with prejudice.[1]  Citizens was dismissed for lack of standing with prejudice and the Braziers were dismissed for lack of standing without prejudice.

---

[1] The complaint had also stated claims against R. Daniel Conlon, Bishop of Roman Catholic Diocese of Joliet, and St. Petronille Parish. The Diocese and St. Petronille filed a motion

¶ 13    In count I of the amended complaint, Citizens asserted that the RDA and ordinance No. 6671 were void because the Village did not first seek approval from the Village's Historic Preservation Commission as allegedly required under section 11-74.4-3 of the TIF Act (65 ILCS 5/11-74.4-3 (West 2018)) and under the Village ordinance governing the Commission.  Count II sought a declaratory judgment invalidating the PSA and ordinance No. 6640.  Citizens argued that the Village could not validly convey the south Main parking lot because the conveyance was conditioned on the approval of the RDA, which was void as alleged in count I.  In dismissing counts I and II with prejudice, the trial court found that section 11-74.4-3 of the TIF Act did not require a hearing before the Village's Historic Preservation Commission concerning the proposed development at issue because the Project was not within a landmark district and did not include landmark property.

¶ 14    On December 6, 2019, the plaintiffs filed a 10-count second amended complaint.  Shoub, Citizens and Braziers were still identified as plaintiffs.[2]  Counts I and II of the amended complaint were repleaded to preserve the plaintiffs right to appeal their dismissal.

¶ 15    Counts III through VI were premised on section 11-13-15 of the Illinois Municipal Code (Municipal Code) (65 ILCS 5/11-13-15 (West 2018)).  In count III, the plaintiffs sought to enjoin

to dismiss the claims against them.  The trial court also granted that motion.  The plaintiffs did not include any claims against them in the second amended complaint and the Diocese and St. Petronille are not parties to this appeal.

[2] Termosj also sought to join as a party plaintiff to the second amended complaint.  Termosj was subsequently dismissed for lack of standing and has since voluntarily dismissed all claims against the defendants with prejudice and is no longer a party to this appeal.

the defendants from developing the proposed public parking garage because the planned design violated section 502.3 of the 2018 Illinois Accessibility Code (Accessibility Code) (71 Ill. Adm. Code 400 APP. A, § 502.3 (2018)), which implements section 4 of the Environmental Barriers Act (410 ILCS 25/4 (West 2018)), because the accessible parking spaces did not adjoin an accessible route, but instead required handicapped persons to use the drive aisles to access buildings or other areas.

¶ 16     In count IV, the plaintiffs sought an injunction to prevent the Village from conveying the south Main parking lot to GSP, issuing a demolition permit for the south Main parking lot, or building the private parking garage.  This was also based on alleged violations of the Accessibility Code.  Specifically, the plaintiffs argued that the design of the private parking garage violated the Accessibility Code because: (1) the handicap-accessible spaces did not adjoin an accessible route; (2) it would only have three of the five required accessible parking spaces; and (3) it did not provide an accessible route that was the shortest accessible route to an accessible entrance to the apartments.

¶ 17     In counts V and VI, the plaintiffs sought to enjoin any further action in pursuit of the Project based on alleged zoning violations.  The plaintiffs alleged that the public and private parking garages would be located in zoning districts that required a special use permit for such uses.  The plaintiffs alleged that the defendants violated Village zoning ordinances by approving the plans for the parking garages without requiring the developer to procure a special use permit.

¶ 18     Count VII was a substantive due process challenge to the approved PUD.  In count VII, the plaintiffs requested that the trial court declare the ordinances approving the preliminary and final PUDs (ordinance Nos. 6672 and 6690) to be arbitrary and capricious as applied to the circumstances of the neighborhood and trends of development.  Count VIII stated a collateral

request for an injunction to prevent any further construction on the Project or the issuance of any building permits because of the alleged substantive due process violation.

¶ 19    In count IX, the plaintiffs sought a declaratory judgment that the ordinance adopting the RDA, ordinance No. 6671, was void because the PUD violated the plaintiffs' due process rights as alleged in count VII and, thus, there was no means through which the RDA could remain valid. Count X sought a declaratory judgment that ordinance No. 6640, approving the PSA, was no longer valid because the Project violated the plaintiffs' due process rights as alleged in count VII.

¶ 20    On January 31, 2020, the defendants filed a joint motion for judgment on the pleadings, pursuant to section 2-615(e) of the Code (735 ILCS 5/2-615(e) (West 2018)), on counts III through VI, IX and X. The defendants argued that they were entitled to judgment on the pleadings on counts III and IV because only the attorney general had the right to challenge a violation of the Accessibility Code. The defendants also asserted that they were entitled to judgment on the pleadings on counts III through VI because the plaintiffs could not rely on section 11-13-15 of the Municipal Code to challenge a future anticipated use of a property. The defendants argued that judgment on the pleadings was appropriate as to counts IX and X because the PUD was presumed valid and, even if it were invalid, the PSA and RDA allowed for a range of performance that could be fulfilled by an alternate development plan.

¶ 21    On that same day, the defendants filed a motion to dismiss the Braziers as plaintiffs from counts VII and VIII due to lack of standing. The defendants asserted that the Braziers had no standing to assert a due process challenge when they did not own property adjacent to or in close proximity to the Project.

¶ 22    On May 4, 2020, the defendants filed a motion for summary judgment on counts VII and VIII. The defendants argued that the plaintiffs' constitutional challenge to the ordinances

approving the preliminary and final PUDs failed as a matter of law because the approved Project satisfied the rational basis test. Numerous exhibits were attached to the motion for summary judgment, such as staff reports from public hearings of the Village's plan commission, copies of the notices of public hearings, traffic impact studies, permit drawings, memos of Village Board meetings regarding the development at issue, consultant review memos regarding the development, and an affidavit from the records custodian certifying the records. The affidavit from the Village's records custodian, Lindsey Kaminsky, indicated that she had the authority to certify the records attached to the motion for summary judgment; that she was familiar with the types of the records the Village received, created and relied on in its normal course of business; that the attached records were true and accurate copies of the records maintained by the Village; that the records were kept, prepared and maintained in the normal course of business and as a regular practice and custom; and finally that "the attached records were prepared in the ordinary course of business at or near the time of the act or occurrence of the matters set forth, and by, or from information transmitted by, a person or persons with knowledge of and a business duty to record or transmit those matters."

¶ 23    On May 20, 2020, following a hearing, the trial court entered an order granting the joint motion for judgment on the pleadings on counts III, IV, V, VI, IX, and X. The trial court renewed its dismissal of counts I and II. The trial court also granted the motion to dismiss the Braziers from counts VII and VIII for lack of standing. On June 17, 2020, the plaintiffs filed a notice of appeal from this order, which was docketed in this court as appeal No. 2-20-0342.

¶ 24    On May 21, 2020, the plaintiffs filed a motion to strike the motion for summary judgment. The plaintiffs argued that the affidavit in support of the motion was insufficient because there was no foundation for the assertion that Kaminsky was familiar with all the records attached to the

motion for summary judgment. In response to the motion to strike, the defendants argued that Kaminsky's affidavit was sufficient. They further argued that the records at issue were clearly self-authenticating certified public records. On June 12, 2020, following a hearing, the trial court denied the motion to strike.

¶ 25 On June 26, 2020, Shoub filed a response to the motion for summary judgment. Shoub argued that the motion should be denied because there was a question of fact as to whether the ordinances passed in pursuit of the Project were constitutionally valid. Shoub attached various affidavits in support of its position. Michael Mallon provided an affidavit stating that he had extensive experience in real estate and retail development. After reviewing all the Project documents and related ordinances, he concluded that the five-story height of the building, that extended for 100 yards, was out of character for downtown Glen Ellyn and that the ordinances did not adhere to the critical terms of the planning documents.

¶ 26 Jianfeng Hua provided an affidavit stating that he had a doctorate in Civil Engineering and extensive experience in the areas of highway geometric design and capacity analysis. He opined that the Project did not provide enough public parking for the commercial uses on site and residential guests. He also opined that the proposed parking garages were unsafe due to the absence of lines of sight for exiting vehicles and that the design made an inefficient use of space.

¶ 27 Shoub also attached an affidavit from Scott Shoub. Scott stated that the Scooter Bay Sales Company was the sole occupant of the Shoub parcel. Scott owned the parcel and Scooter Bay. Scooter Bay occupied a 4000 square foot two-story office building, had about 40 employees, and often hosted large conferences for manufacturers and customers. The building had large windows that overlooked the south downtown historic district and the railroad. The Shoub parcel had 16 parking spaces outside its main entrance and a sidewalk provided access between the main entrance

and the south Main parking lot. However, if the Project were completed, there would be no direct connection from the Shoub parcel to the south Main parking lot. Additionally, the five-story building would obstruct views from Scooter Bay's windows.

¶ 28    On July 28, 2020, following a hearing, the trial court granted the motion for summary judgment. The trial court found that the record clearly established that the Project furthered the public health, safety, and welfare; eradicated blight that existed for several years in the subject area; increased parking; and generated significant tax revenue for the Village for streetscape purposes and for general use. The trial court determined that the Village clearly had a rational basis for approving the Project. The plaintiffs filed a timely notice of appeal from this order, which was docketed in this court as appeal No. 2-20-0477. Thereafter, by agreement of the parties, this court entered an order consolidating appeal Nos. 2-20-0342 and 2-20-0477.

¶ 29                                    II. ANALYSIS

¶ 30    On appeal, the plaintiffs argue that the trial court erred in dismissing counts I through VI and counts IX and X of the second amended complaint. The plaintiffs also argue that the trial court erred in granting summary judgment in favor of the defendants on counts VII and VIII. Finally, the plaintiffs argue that the trial court erred in dismissing the Braziers and Citizens for lack of standing. We will address each of these arguments in turn.

¶ 31                                 A. Counts I and II

¶ 32    The plaintiffs' first contention on appeal is that the trial court erred in dismissing counts I and II of the amended complaint. Count I sought to invalidate the RDA because the Village's Historic Preservation Commission was not involved in its approval. Count II sought to invalidate the PSA because it was conditioned on the approval of the allegedly invalid RDA. Count I was dismissed under section 2-619 of the Code (735 ILCS 5/2-619 (West 2018)), affirmative matter

defeating the claim, and count II was dismissed under section 2-615 (*id.* § 2-615), failure to state a claim. A section 2-615 motion to dismiss challenges the sufficiency of the complaint, whereas a 2-619(a)(9) motion to dismiss admits the legal sufficiency of the complaint but asserts an affirmative matter that defeats the cause of action. *Glasgow v. Associated Banc-Corp*, 2012 IL App (2d) 111303, ¶ 11. Our review is *de novo* under either section 2-615 or 2-619. *Id.*

¶ 33    In arguing that the trial court erred, the plaintiffs rely on section 11-74.4-3(q) of the Municipal Code. That section states:

> "No cost shall be a redevelopment project cost in a redevelopment project area if used to demolish, remove, or substantially modify a historic resource, after August 26, 2008 (the effective date of Public Act 95-934), unless no prudent and feasible alternative exists. "Historic resource" for the purpose of this paragraph means (i) a place or structure that is included or eligible for inclusion on the National Register of Historic Places or (ii) a contributing structure in a district on the National Register of Historic Places. This paragraph does not apply to a place or structure for which demolition, removal, or modification is subject to review by the preservation agency of a Certified Local Government designated as such by the National Park Service of the United States Department of the Interior." 65 ILCS 5/11-74.4-3(q) (West 2018).

The parties agree that the Village is a certified local government and that the Giesche building was an historic resource.

¶ 34    The plaintiffs contend that, under section 11-74.4-3(q), the Project was required to be presented to and approved by the Village's Historic Preservation Commission because it involved the demolition of the Giesche building. Alternatively, they argue that if the Commission was not involved, the Village was prohibited from including demolition costs as part of the Project. The

plaintiffs argue that the failure to involve the Commission and the inclusion of demolition costs with the RDA rendered void ordinance nos. 6640 (PSA) and 6671 (RDA).

¶ 35    Resolution of these contentions requires us to interpret both the statute and the Village code.  In construing a statute, our task is to "ascertain and give effect to the legislature's intent." (Internal quotation marks omitted.)  *First Bank of Highland Park v. Sklarov*, 2019 IL App (2d) 190210, ¶ 23.  The best indicator of the legislature's intent is the plain language of the statute.  *Id.* We give undefined terms their ordinary and popularly understood meanings.  *Skaperdas v. Country Casualty Insurance Co.*, 2015 IL 117021, ¶ 15.  When the statute's language is clear, we apply it as written, without resort to extrinsic aids of statutory construction.  *Lee v. John Deere Insurance Co.*, 208 Ill. 2d 38, 43 (2003).  Matters involving statutory interpretation are reviewed *de novo*. *National Life Real Estate Holdings, LLC v. Scarlato*, 2017 IL App (1st) 161943, ¶ 20.  In construing an ordinance, the same rules employed in statutory construction apply.  *In re Application of County Collector of Kane County*, 132 Ill. 2d 64, 72 (1989).

¶ 36    First, the plaintiffs contend that section 11-74.4-3(q) indicates that, because the Project involved demolition of the Giesche building, the Village was required to seek approval from the Village's Historic Preservation Commission before approving ordinance Nos. 6640 and 6671.  The plaintiffs note that the powers and duties of the Commission are: "to make recommendations to the Village Board concerning means to preserve, protect, enhance, rehabilitate and perpetuate landmarks and structures in landmark districts" and "to advise any Village department *** concerning the effect of its actions *** or activities on designated or potential landmarks."  See Glen Ellyn Code of Ordinances, § 2-13-2(D)(9), 2(D)(14).

¶ 37    We find the plaintiffs' argument unpersuasive as the Giesche building was not a potential landmark or in a landmark district.  The record indicates that the Commission attempted to have

the Giesche building designated as a landmark. However, such designation required owner consent (Glen Ellyn Code of Ordinances, § 2-13-4), and GSP, the owner of the Giesche building, did not give consent. Further, the record shows that GSP acquired the appropriate permission to demolish the building from the Illinois State Historic Preservation Office and the Illinois Environmental Protection Agency. Accordingly, the Commission did not have any jurisdiction over the Project under the Village code and section 11-74.4-3(q) of the Municipal Code did not require the Village to seek approval for the Project and the related ordinances from the Commission.

¶ 38   The plaintiffs alternatively argue that, if Commission approval was not required, the Project and its related ordinances are invalid because the Project did not exclude demolition costs for the Giesche building, an historic resource, as reimbursable expenses. This argument is also without merit. The plain language of section 11-74.4-3(q) prohibits the inclusion of costs and use of TIF revenue, in a redevelopment project, for demolition, removal or substantial modification of a historic resource unless no feasible alternative exists. The Project does not violate this requirement. Section 5G of the RDA specifically required the developer to pay all demolition costs. In the appellant brief, the plaintiffs direct us to section 8(B)(2) of the RDA, which states that the developer may apply for and receive up to $240,000 per year of reimbursable project costs under the TIF Act. They also direct us to two exhibits that are part of the RDA. Specifically, Exhibit K, a reimbursement form, and Exhibit L, a project budget. However, none of these indicate that demolition costs are being paid by the Village. As noted, the RDA specifically excludes demolition costs. Exhibit K required the developer to certify that costs for which reimbursement was being sought were eligible costs under the TIF Act—which does not allow reimbursement for demolition costs. Although Exhibit L, the project budget, may include demolition costs, it did not

set forth any requirement that the Village be required to pay those expenses. Accordingly, the trial court did not err in dismissing counts I and II of the amended complaint.

¶ 39                                B. Counts III and IV

¶ 40    The plaintiffs next argue that the trial court erred in dismissing counts III and IV of the second amended complaint. Counts III and IV sought statutory injunctive relief under section 11-13-15 of the Municipal Code (65 ILCS 5/11-13-15 (West 2018)), to prevent the development of the public and private parking garages because the plans violated the Accessibility Code (71 Ill. Adm. Code 400 APP. A). The trial court dismissed these counts on the pleadings under section 2-615(e) of the Code. The well-established standard of review for an order granting judgment on the pleadings has been set forth by our supreme court as follows:

> "Judgment on the pleadings is proper only where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. [Citation.] In ruling on a motion for judgment on the pleadings, only those facts apparent from the face of the pleadings, matters subject to judicial notice, and judicial admissions in the record may be considered. All well-pleaded facts and all reasonable inferences from those facts are taken as true. [Citation.] Our review is *de novo.*" *M.A.K. v. Rush-Presbyterian-St. Luke's Medical Center*, 198 Ill. 2d 249, 255 (2001).

¶ 41    Section 11-13-15 of the Municipal Code states as follows:

> "In case any building or structure, including fixtures, is constructed, reconstructed, altered, repaired, converted, or maintained, or any building or structure, including fixtures, or land, is used in violation of an ordinance * * * any owner or tenant of real property, within 1200 feet in any direction of the property on which the building or structure in question is located who shows that his property or person will be substantially affected by the alleged

violation, in addition to other remedies, may institute any appropriate action or proceeding (1) to prevent the unlawful construction, reconstruction, alteration, repair, conversion, maintenance, or use, (2) to prevent the occupancy of the building, structure, or land, (3) to prevent any illegal act, conduct, business, or use in or about the premises, or (4) to restrain, correct, or abate the violation. * * *

* * *

An owner or tenant need not prove any specific, special or unique damages to himself or his property or any adverse effect upon his property from the alleged violation in order to maintain a suit under the foregoing provisions." 65 ILCS 5/11-13-15 (West 2018).

¶ 42    In the trial court, the defendants had argued that section 11-13-15 of the Municipal Code could not be used to challenge a future anticipated use of a property. In response to that argument, the plaintiffs first argue on appeal that the second amended complaint was not premature—that they did not need to wait for actual construction to begin before filing their complaint. The defendants do not challenge this proposition on appeal. Further, the statute supports the plaintiffs' position because the plain language of section 11-13-15 allows for a claim "to prevent unlawful construction." *Id.* Case law also supports the plaintiffs' proposition. See *Greer v. Illinois Housing Development Authority*, 150 Ill. App. 3d 357, 385 (1986) (neighbors alleging that a proposed development violated a zoning ordinance); *Nonnenmann v. Lucky Stores, Inc.*, 53 Ill. App. 3d 509, 512 (1977) (plaintiff contesting the defendant's proposed use of the property). We therefore agree that the plaintiffs need not wait until construction has commenced to bring this suit.

¶ 43    Nonetheless, the defendants argue that the claims were not ripe because building permits had not been issued for the Project and the PUD approval did not allow the developer to construct any portion of the Project until a building permit had been processed. The defendants contend that

any deviations from the accessible parking requirements of the Village code or the Accessibility Code would need to be rectified prior to any building permits being issued and, thus, there are no zoning violations to contest under section 11-13-15.

¶ 44    In so arguing, the defendants rely on *Drovers Bank of Chicago v. Village of Hinsdale*, 208 Ill. App. 3d 147 (1991). In that case, the reviewing court noted that several courts held that "the decision of a municipality is not ripe for review unless that decision is final and definite with respect to the property at issue." *Id.* at 154 (citing *Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1573 (11th Cir. 1989); *Hoehne v. County of San Benito*, 870 F.2d 529, 532 (9th Cir. 1989); and *Unity Ventures v. County of Lake*, 841 F.2d 770, 775 (7th Cir. 1988)). In *Drovers*, the bank filed an application for a proposed development plan. *Drovers*, 208 Ill. App. 3d at 150. The municipality denied the application because it did not meet the requirements of certain zoning ordinances. *Id.* The bank challenged the municipality's determination. The reviewing court held that the plaintiff's challenge to the rejection of its development plan would not be ripe until the municipality denied a request for a variance. *Id.* at 154.

¶ 45    The defendants' reliance on *Drovers* is unpersuasive. In *Drovers*, the bank had not exhausted all its requirements before seeking redress in the courts. It was well established that the next step for the bank was to seek a variance. *Id.* at 153. In the present case, there is a final approved PUD that allegedly violates state and local accessibility requirements for handicapped parking. Unlike *Drovers*, there is no well-established rule that the final approved PUD cannot be challenged until building permits are issued. The issue in this case is thus ripe for review. See *Harris Bank of Roselle v. Village of Mettawa*, 243 Ill. App. 3d 103, 111 (1993) (an ordinance is not mere advice but law; as such, it may give rise to "concrete disputes" that a court can settle in order to make "a definitive and immediate determination of the rights of the parties.").

¶ 46    Turning to the merits, the plaintiffs argue that the trial court erred in dismissing counts III and IV because there is a private cause of action under the Accessibility Code to enforce its provisions. We need not address this issue because, regardless of whether there is a private cause of action under the Accessibility Code, there is a private cause of action under Village ordinance. Section 10-5-8(A) of the Village code (Glen Ellyn Code of Ordinances § 10-5-8(A) (2012)) states that all parking lots must have handicapped parking that meets the requirements of the Accessibility Code. Further, section 10-10-18 of the Village code (*Id.* § 10-10-18) states that "any person whose property value or use is or may be affected by" a violation of a zoning ordinance, may bring a cause of action "to prevent  such unlawful *** construction" or "to restrain *** such violation." At a minimum, the plaintiff, Shoub, has property that would be affected by the alleged violations as it alleged it has a handicapped board member. In addition, environmental barriers are said to affect the safety and welfare of all members of society (see 410 ILCS 25/2 (West 2018)), which necessarily includes Shoub and the Braziers. Accordingly, as the Village Code provides a private cause of action to redress the alleged Accessibility Code violations, the trial court erred in dismissing counts III and IV of the second amended complaint.

¶ 47                                    C. Counts V and VI

¶ 48    Counts V and VI sought statutory injunctive relief under section 11-13-15 of the Municipal Code to prevent the development of the parking garages because the Village did not procure the requisite special use permits. The trial court granted the defendant's motion for judgment on the pleadings because the PUD incorporated all the necessary special uses. On appeal, the plaintiffs argue that the parking garages are located in the C5A and C5B zoning districts and that parking garages are special uses in those zoning districts. The plaintiffs acknowledge that under § 10-7-7 of the Village code (Glen Ellyn Code of Ordinances, § 10-7-7 (2014)), a PUD is a special use, but

argue that nothing in the Village code exempts the Village from the obligation to obtain the necessary special use permits for items such as, in this case, the parking garages.

¶ 49    As noted above, municipal ordinances are interpreted using the same general rules of statutory interpretation. *Kane County*, 132 Ill. 2d at 72.  In the present case, section 10-7-2(A) of the Village code states that PUDs may be authorized as a special use within, in relevant part, C2 through C5 zoning districts.  Glen Ellyn Code of Ordinances, § 10-7-2(A) (2017).  Section 10-10-14 addresses application procedures for a special use.  *Id.* § 10-10-14.  Section 10-10-15 addresses procedures for obtaining a special use permit for planned unit developments.  *Id.* § 10-10-15.  Section 10-10-15(B)(1)(e) requires the applicant to list each separate use to be contained within the PUD.  *Id.* § 10-10-15(B)(1)(e).  Section 10-2-2 defines a PUD as "[o]ne or more uses accommodated in a planned environment under more flexible standards than those allowed in the district(s) in which the development is located."  *Id.* § 10-2-2.  Reading the provisions of the Village code as a whole, approval of the PUD granted a special use for each of the uses in the planned environment such as the private and public parking garages.  Accordingly, there is nothing in the Village code that required the defendants to apply for a separate special use permit, apart from the PUD, for the parking garages and, therefore, the trial court did not err in dismissing counts V and VI.

¶ 50                              D.  Counts VII and VIII

¶ 51    The plaintiffs first argue that the trial court erred in denying its motion to strike the motion for summary judgment.  Generally, "this court reviews a circuit court's decision on a motion to strike an affidavit for an abuse of discretion, but when the motion 'was made in conjunction with the court's ruling on a motion for summary judgment,' we employ a *de novo* standard of review with respect to the motion to strike." *Palmer v. Mellen*, 2017 IL App (3d) 160022, ¶ 33 (quoting

*Jackson v. Graham*, 323 Ill. App. 3d 766, 773 (2001)). Accordingly, we employ the *de novo* standard of review on this issue.

¶ 52 The plaintiffs argue that Kaminsky's affidavit violated Supreme Court Rule 191(a) (eff. Jan. 4, 2013), which requires that affidavits be based on personal knowledge of the affiant, because she admitted that people from other departments of the Village, such as the community development department or the public works department, provided her with various documents. The plaintiffs also argue that the documents were inadmissible hearsay. We find these arguments to be without merit. While Kaminsky did not personally create every document provided, she attested that, as the Village's public information officer, she was familiar with the records kept by the various departments of the Village and that the documents attached to the motion for summary judgment were accurate copies of what was on file with the Village. Further, the documents in support of the motion for summary judgment were admissible as public records under Rule 803(8) (Ill. R. Evid. 803(8) (eff. Jan. 1, 2011)) and self-authenticating under Rule 902(4) (Ill. R. Evid. 902(4) (eff. Jan. 1, 2011)). See *Khan v. Department of Healthcare and Family Services*, 2020 IL App (1st) 191212, ¶ 68. Accordingly, the trial court did not err in denying the motion to strike.

¶ 53 The plaintiffs next argue that the trial court erred in granting summary judgment in favor of the defendants on counts VII and VIII. Summary judgment is appropriate where, when viewed in the light most favorable to the nonmoving party, the pleadings, depositions, admissions, and affidavits on file reveal that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. *Hall v. Henn*, 208 Ill. 2d 325, 328 (2003). When reviewing a trial court's award or denial of summary judgment, we must construe the pleadings, depositions, admissions, exhibits, and affidavits strictly against the moving party and liberally in favor of the

non-moving party. *Pyne v. Witmer*, 129 Ill. 2d 351, 358 (1989). The standard of review for the entry of summary judgment is *de novo*. *Clausen v. Carroll*, 291 Ill. App. 3d 530, 536 (1997).

¶ 54    The plaintiffs argue that summary judgment was improper because the trial court did not consider the proper factors, it only considered whether the development at issue had a rational basis. Specifically, the plaintiffs assert that the review of legislative zoning decisions should be based on the *LaSalle-Sinclair* factors (see *LaSalle National Bank of Chicago v. County of Cook*, 12 Ill. 2d 40 (1957); *Sinclair Pipe Line Co. v. Village of Richton Park*, 19 Ill. 2d 370 (1960)). The plaintiffs contend that the trial court focused only on one of those factors, the economics of the RDA, and did not evaluate the planning documents. The plaintiffs note that their expert, Michael Mallon, stated that the height, scale and character of the Project was not in line with the downtown area, and that the Project did not adhere to the critical terms of the planning documents. The plaintiffs further argue that the trial court did not consider the other *LaSalle-Sinclair* factors.

¶ 55    Home rule municipalities, such as the Village, have broad power to perform any function pertaining to their governments and affairs, including enacting municipal development regulations such as zoning ordinances. *Gurba v. Community High School District No. 155*, 2015 IL 118332, ¶ 13. A zoning ordinance is presumptively valid, and courts will not interfere with the municipality's discretion unless the plaintiff proves by clear and convincing evidence that the municipality's action was arbitrary and capricious or unrelated to the public health, safety, and morals. *La Salle National Bank*, 12 Ill. 2d at 46. When a legislative zoning action is challenged based on substantive due process, we will examine the zoning action for arbitrariness under the six-factor test set forth in *La Salle National Bank*. *Our Savior Evangelical Lutheran Church v. Saville*, 397 Ill. App. 3d 1003, 1027 (2009).

¶ 56    The *La Salle* court identified six factors as being "among the facts which may be taken into consideration" when determining a zoning ordinance's validity: (1) the existing uses and zoning of nearby property; (2) the extent to which property values are diminished by the particular zoning restrictions; (3) the extent to which the destruction of a plaintiff's property values promotes the health, safety, morals, or general welfare of the public; (4) the relative gain to the public as compared to the hardship imposed upon the individual property owner; (5) the suitability of the subject property for the zoned purposes; and (6) the length of time the property has been vacant as zoned, considered in the context of land development in its vicinity. *La Salle*, 12 Ill. 2d at 46-47.

¶ 57    Additional factors that have been identified include (7) whether a comprehensive government zoning plan for land use and development exists; (8) if so, whether the ordinance is in harmony with it; and (9) the evidence or lack of evidence of community need for a proposed use. See *Sinclair Pipe Line Co. v. Village of Richton Park* (1960), 19 Ill. 2d 370, 378 (1960); *Forestview Homeowners Association, Inc. v. County of Cook* (1974), 18 Ill. App. 3d 230, 240-41, 243 (1974). We use the *LaSalle-Sinclair* factors to determine whether the legislative zoning action was reasonably related to a legitimate government interest and was a reasonable method to achieve that purpose. See *Napleton v. Village of Hinsdale*, 364 Ill. App. 3d 1098, 1110 (2007).

¶ 58    In the present case, the trial court's failure to explicitly address each *LaSalle-Sinclair* factor is not a basis to conclude that summary judgment was improper. While *LaSalle* and *Sinclair* state factors to consider, the list of factors is not exclusive, and no one factor controls. *LaSalle*, 12 Ill. 2d at 46-47. The validity of a zoning ordinance is to be determined based on the facts and circumstances in each case. *Id.* Moreover, although the plaintiffs argue that the *LaSalle-Sinclair* factors should have been considered, they do not address how each factor supports their position. In their appellant brief, they only address two of the factors. It is well settled that this court is not

a depository in which a party may dump the burden of argument and research. *Groenings v. City of St. Charles*, 215 Ill. App. 3d 295, 306 (1991). The appellant bears the burden to persuade this court that it should prevail. See, *e.g.*, *Yamnitz v. William J. Diestelhorst Co., Inc.*, 251 Ill. App. 3d 244, 250 (1993) (the appellant carries the burden of persuasion on appeal).

¶ 59 The two factors addressed by the plaintiffs are that the Project was out of character with existing zoning and uses of nearby property and that the Shoub affidavit supported a diminution in value of the Shoub parcel. In the Shoub affidavit, Scott stated that the parcel's property would diminish in value because there would not be 16 parking spaces right outside its door and there would not be a direct walkway to the new parking garage. Further, the development would obstruct views from Scooter Bay's windows. However, these do not create a question of fact as to whether the Village's approval of the Project was arbitrary or unreasonable. There is no allegation that the parking for the Shoub parcel would be nonexistent or the changes too onerous. Further, the benefits to the Village of Glen Ellyn as a whole are sufficient as a matter of law to overcome any diminution in value from the obstruction of views from Scooter Bay's windows.

¶ 60 As to the Project being out of character, the plaintiffs argue that their substantive due process challenge is supported by the planning documents which, according to the Mallon affidavit, do not support the Project because of the tall building height and insufficient parking. However, the plaintiffs also acknowledged that "planning documents are merely advisory and are not law," citing *City of Chicago Heights v. Living Word Outreach Full Gospel Church & Ministries, Inc.*, 196 Ill. 2d 1, 22-23 (2001). The record shows that the Village considered the PUDs' deviations from the zoning code, including the fact that the height of the building exceeded that allowed by the zoning code. The plaintiffs repeatedly complain about the insufficient parking.

However, the Project includes an indoor public parking garage and TIF revenues will be used to construct another public parking garage one-half block away.

¶ 61     In summary, the plaintiffs have failed to establish a genuine question of material fact as to whether the approval of the Project and the related ordinances lacked a rational basis by being arbitrary and capricious or unrelated to the public health, safety, and morals.  It is well settled that zoning decisions will not be held invalid merely because there is a difference of opinion on the issue. *Hannifin Corp. v. City of Berwyn*, 1 Ill. 2d 28, 35 (1953).  The record demonstrates that the Village had been considering a mixed-use development in the downtown area since 2001.  The plaintiffs do not challenge that appropriate procedures were followed in enacting the ordinances, including holding the necessary public hearings.    Further, there is no blanket rule that significant zoning deviations show that a municipality lacked a rational basis in allowing a development project to go forward.  As such, the trial court did not err in granting summary judgment on counts VII and VIII.

¶ 62                                E. Counts IX and X

¶ 63     The plaintiffs' next contention is that the trial court erred in granting judgment on the pleadings on counts IX and X.  The plaintiffs argue that if the PUD is found unconstitutional as alleged in count VII, then the PSA and RDA are no longer valid.  As we have determined that summary judgment was proper on count VII, we affirm the dismissal of counts IX and X as those claims are moot. *Peach v. McGovern*, 2019 IL 123156, ¶ 64 (courts of review will not decide moot or abstract questions or render advisory opinions); see also *Bartoszewski v. Village of Fox Lake*, 269 Ill. App. 3d 978, 986 (1995) (a reviewing court may affirm a trial court's decision on any basis appearing in the record).

¶ 64                                F. Standing

¶ 65    The plaintiffs argue that the trial court erred in dismissing the Braziers from counts VII and VIII for lack of standing and in dismissing Citizens for lack of organizational standing as to the entire complaint.  As we have determined that summary judgment on counts VII and VIII was appropriate, we need not determine whether the trial court erred in dismissing Braziers from those counts for lack of standing as the issue is moot.  *Peach*, 2019 IL 123156, ¶ 64.  Further, as we have determined that dismissal on all other counts was appropriate, except for counts III and IV, we address only whether Citizens had standing to assert counts III and IV.

¶ 66    Lack of standing is an affirmative matter that may be asserted in a motion pursuant to section 2-619(a)(9) of the Code.  735 ILCS 5/2-619(a)(9) (West 2006); *International Union of Operating Engineers, Local 148 v. Department of Employment Security*, 215 Ill. 2d 37, 45 (2005).  In a motion to dismiss brought under section 2-619, the movant may go beyond the allegations of the complaint and assert affirmative matters that would defeat the plaintiff's claim. 735 ILCS 5/2-619 (West 2004); *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 485 (1994).

¶ 67    "Under Illinois law, a plaintiff need not allege facts establishing standing. [Citations.] Rather, it is the defendant's burden to plead and prove lack of standing. [Citations.] Where standing is challenged by way of a motion to dismiss, a court must accept as true all well-pleaded facts in the plaintiff's complaint and all inferences that can reasonably be drawn in the plaintiff's favor." *International Union*, 215 Ill. 2d at 45.  We review *de novo* the dismissal of a complaint for lack of standing.  *Id.*

¶ 68    In *International Union*, the Illinois Supreme Court discussed the doctrine of associational standing, through which an organization may assert the legal rights of its members in certain circumstances. The court noted that the doctrine was firmly established in federal law and had

been the subject of several United States Supreme Court cases, which identified three requirements for associational standing:

> " '(a) [the organization's] members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.' " *International Union*, 215 Ill.2d at 47 (quoting *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977).

The issue of a plaintiff's standing is determined from the allegations contained in the complaint. *Barber v. City of Springfield*, 406 Ill. App. 3d 1099, 1101 (2011).

¶ 69 Citizens is a not-for-profit corporation formed for the purpose of preserving the historic character of the Village, including the south downtown area. Accordingly, its interest in the Project, and the Project's effects on the character of the south downtown area, is germane to its purpose. The Braziers and Shoub are members of Citizens and the defendants do not challenge the Braziers' or Shoub's standing as to counts III and IV. Thus, whether Citizens has standing turns on whether the requested relief requires the participation of individual members in the lawsuit. Here, counts III and IV, based on alleged violations of the Accessibility Code, can be established through Village records and ordinances, review of applicable statutes, local officials, and other competent witnesses. As such, participation of individual members is not necessary. Accordingly, the trial court erred in holding that Citizens lacked standing as to counts III and IV.

¶ 70 The defendants rely on *Landmarks Preservation Council of Illinois v. City of Chicago*, 125 Ill. 2d 164 (1988), in arguing that the trial court's dismissal of Citizens was proper. In that case, the supreme court held that several groups lacked standing to challenge a Chicago ordinance that removed landmark status from the McCarthy building. The court noted that a party "cannot gain

standing merely through a self-proclaimed concern about an issue, no matter how sincere." *Id.* at 175. The court also noted that the groups did not have a legally cognizable stake in the status of the McCarthy Building as none of the groups was an owner of the McCarthy building or even an owner of adjoining property. *Id.* The court further stated that "[a]s far as we are aware, none has any protectable right to even use the building. Their only interest appears to be the ability to view this private property from a public street." *Id. Landmarks* is distinguishable from this case. In *Landmarks* the McCarthy building was privately owned. Here, the property at issue is public property owned by the Village for public benefit. Further, Shoub, a member of Citizens, is an adjoining property owner. The defendants' reliance on *Landmarks* is thus unpersuasive.

¶ 71                                    III. CONCLUSION

¶ 72     For the foregoing reasons, we affirm dismissal of counts I, II, V, VI, IX and X, and we affirm summary judgment on counts VII and VIII. Based on this determination, the propriety of the dismissal of the Braziers for lack of standing on counts VII and VIII is moot. We reverse the dismissal of counts III and IV, and the dismissal of Citizens for lack of standing as to counts III and IV, and remand for additional proceedings consistent with this order.

¶ 73     Affirmed in part and reversed in part. Cause remanded.